COMMONWEALTH *vs.* A JUVENILE.

Bristol.  January 3, 1972. — February 22, 1972.

Present: CUTTER, REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Deliquent Child.  Evidence,* Juvenile delinquency proceeding, Con-
tradiction of Witness. *Error,* Whether error harmful.

Evidence indicating that a juvenile and the victim of a stabbing
   murder had been playing together with a knife on the afternoon of
   the murder; that the victim's body was found near the juvenile's
   home; that prior to any public knowledge, the juvenile knew that
   the victim had been stabbed and that the knife had lost its handle;
   that the juvenile had recounted to others that he had stabbed the
   victim and had accurately described the wounds; that he knew the
   location of the murder and had searched for a knife there; and
   that he had bloodstained shoes, was sufficient to sustain a jury
   verdict of guilty of murder in the second degree.  [215–217]
G. L. c. 119, § 60, does not disqualify witnesses who testify in a
   delinquency hearing in a District Court from testifying in the
   Superior Court on appeal, nor does use of the District Court
   transcript by a Commonwealth witness to refresh his recollection
   constitute "evidence against such child" within § 60.  [217]
G. L. c. 119, § 60, is not applicable to the proceedings on a delinquency
   complaint itself and did not prevent the juvenile from using a
   transcript of a District Court hearing adjudicating his delinquency
   to impeach the credibility of Commonwealth witnesses in the
   Superior Court on appeal [218]; and where that transcript indi-
   cated District Court testimony substantially more favorable to the
   juvenile than that offered in the Superior Court, it was prejudicial
   error to exclude such attempts at impeachment [218–219].

COMPLAINT received and sworn to in the Fourth Dis-
trict Court of Bristol on April 13, 1970.

Upon appeal to the Superior Court the case was tried
before *Linscott,* J.

*Charlotte A. Perretta* (*Edward J. Kelley* with her) for the defendant.

*Philip A. Rollins,* District Attorney, for the Commonwealth.

BRAUCHER, J.   After a hearing in a District Court pursuant to G. L. c. 119, § 54, as amended by St. 1966, c. 374, the juvenile was adjudged a delinquent child in that he did commit murder.   He appealed to the Superior Court under G. L. c. 119, § 56, and by a jury verdict he was adjudicated a delinquent by reason of murder in the second degree.   He now appeals to this court under G. L. c. 278, §§ 33A–33G, assigning as error the denial of his motions for a directed verdict and a ruling that he could not use the transcript of evidence in the District Court in the cross-examination of witnesses.   He also asks this court to permit as an additional assignment of error the allowance of testimony on behalf of the Commonwealth by the same witnesses who had previously testified in the District Court.   See *Commonwealth* v. *Conroy.* 333 Mass. 751, 756–757, as to our power to permit such an additional assignment of error.

1.   To pass upon the denial of the motions for a directed verdict, we summarize the evidence most favorable to the Commonwealth.   The nine year old victim and the juvenile, age thirteen, were playing together with a knife in the back yard of the juvenile's home about 3:30 P.M. on Wednesday, April 8, 1970.   After the victim failed to return home at the usual supper hour, about 5:30 P.M., his family, the police, neighbors and others searched the neighborhood.   About 6 A.M. the next morning a neighbor found the victim's body in the woods nearby.   At this point the victim's father thought the victim had fallen from a tree.   On the evening of April 9, no one in the victim's household was aware that it was other than an accident.   In fact, an autopsy had been performed that day; it disclosed three stab wounds, one of which penetrated the heart and caused the death.   A broken knife blade, which could have caused the wounds, was later

found thirty to forty feet from where the body was found. There were human bloodstains on the blade and no identifiable fingerprints.

There was evidence from which the jury could infer that the victim was last seen alive at approximately 3:30 P.M. on April 8. The juvenile was not accounted for from then until approximately 4 P.M. when he was at a doctor's office, and he was also not fully accounted for from 5 P.M., when he left the doctor's office until about 6:15 P.M. The jury viewed the area between where the victim's body was found and the doctor's office. The juvenile was able to go from the doctor's office to his home in three or four minutes, and the victim's body was found about 200 yards from the street on which the juvenile's home was located, in a wooded area with heavy underbrush. At approximately 5 P.M. the juvenile visted the victim's home and asked for the victim's brothers, but not the victim. The juvenile appeared pale and spoke quietly and slowly, whereas his usual manner of talking was quick and loud.

There was also evidence that on the day the body was found, April 9, at a time prior to any public or police knowledge of homicide, the juvenile knew that the victim had been stabbed. On that day, the juvenile told other children that he had stabbed the victim with a knife and accurately described the nature and location of the wounds. Testimony was also given that the juvenile knew the location of the murder, that he searched there for a knife with another child on the morning of April 11, and that he told this companion that if he found the knife "everything would be all right." The juvenile appeared to know that the knife found by the police had lost its handle before he was informed of that fact and before he was shown the knife. In a search of the juvenile's room on April 11, the police found a pair of shoes with a small bloodstain, which could have been caused by human blood, on the left sole.

This evidence is sufficient to allow a jury to find the juvenile guilty beyond a reasonable doubt. *Common-*

*wealth* v. *Webster*, 5 Cush. 295, 320. *Commonwealth* v. *Russ*, 232 Mass. 58, 68–69. *Commonwealth* v. *Martin*, 358 Mass. 282, 290–291. It is not equally consistent with the juvenile's innocence. *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 352–353. Cf. *Commonwealth* v. *O'Brien* 305 Mass. 393, 400–401. Nor is any one fact in the chain of inference wholly inconsistent with the guilt of the juvenile. *Commonwealth* v. *Webster, supra,* at 318–319. The judge correctly denied the juvenile's motions for a directed verdict.

2. There is no merit in the juvenile's contention that witnesses who testified in the delinquency hearing in the District Court were disqualified from testifying in the Superior Court on appeal by G. L. c. 119, § 60, as appearing in St. 1948, c. 310, § 6. Such a rule would make nonsense of the statute and the appeal, requiring the counsel for the Commonwealth to save out some of his witnesses for the appeal. One Commonwealth witness testified that he had used the District Court transcript to refresh his recollection, but such use does not constitute it "evidence against such child" within the meaning of the statute. *Bendett* v. *Bendett*, 315 Mass. 59, 63. *Davis* v. *Hotels Statler Co. Inc.* 327 Mass. 28, 30–31.

3. It was error, however, as the juvenile contends, to prevent him from using the transcript of the delinquency hearing in the District Court to impeach the credibility of Commonwealth witnesses in the Superior Court. General Laws c. 119, § 60, provides that "any evidence given in any case" arising under G. L. c. 119, §§ 52–59, "shall not be lawful or proper evidence *against such child* for any purpose in any proceeding in any court . . ." (emphasis supplied). *Commonwealth* v. *Wallace*, 346 Mass. 9, 15–16. The juvenile argues forcefully that such a prohibition does not limit the use of the evidence on behalf of the child. Compare *Murphy* v. *City of New York*, 273 App. Div. (N.Y.) 492, 495, with *Murello* v. *Lustig*, 114 N. Y. S. 2d 632, 633 (Supr. Ct.), affd. 282 App. Div. (N. Y.) 712, app. den. 306 N. Y. 981. See *Farms Appeal*, 216 Pa. Super. 445, 454.

We do not pass on this contention as it is made by the juvenile, for we think § 60 inapplicable on a broader ground. In the *Wallace* case the delinquency complaint had been dismissed, and the evidence in question was thereafter admitted at a criminal trial under an indictment for murder in the second degree. We think it clear that § 60 has no application to the proceeding on the delinquency complaint itself. That proceeding includes not only the hearing in the District Court but also the trial on the appeal in the Superior Court under § 56 and any review in this court on exceptions or appeal. Thus the provision of § 60 limiting the use in subsequent proceedings of "records" in delinquency cases should limit such use of an adjudication on appeal just as much as it limits use of an adjudication in the District Court. Similarly, G. L. c. 119, §§ 60A and 65, protecting the child from publicity, are applicable in the Superior Court as well as in the District Court. There is no need for an additional restriction on the evidence to be heard in the delinquency proceeding, and such a restriction might seriously detract from the fairness of the proceeding.

4. Apart from § 60, the juvenile was entitled to show that a Commonwealth witness had made previous inconsistent or conflicting statements, either by eliciting such statements upon cross-examination or by proving them by other witnesses. The extent of cross-examination on collateral issues must be left largely to the discretion of the trial judge, but that rule has no application where alleged contradictory statements of a witness relate to the main issue that is being tried. *Commonwealth* v. *West,* 312 Mass. 438, 440. *Assessors of Pittsfield* v. *W. T. Grant Co.* 329 Mass. 359, 360. Moreover, the judge did not rule as matter of discretion, but made it clear that he relied entirely on his erroneous reading of § 60.

5. It remains to consider whether the error was prejudicial. Exceptions were taken to the exclusion of evidence to contradict five of the Commonwealth's witnesses. On each occasion the juvenile's counsel skilfully and with

some success sought to make the same point without using the District Court transcript. By agreement of counsel that transcript has been submitted to us, and we have reviewed it with a view to ascertaining what it might have added. In at least two of the occasions where exceptions were taken the testimony bore directly on guilt, and the juvenile's counsel was entirely prevented from bringing to the attention of the jury District Court testimony substantially more favorable to the juvenile. On each occasion there was other similar evidence, but the case was very largely circumstantial and we cannot say that the juvenile was not adversely affected. Moreover, it seems likely that if the erroneous adverse ruling had not been made, his counsel would have used the District Court transcript on many other occasions. We think fairness requires a new trial.

*Judgment reversed and*
*verdict set aside.*