COMMONWEALTH *vs.* RONNIE MACARTHUR FRANKLIN.

Suffolk.    May 13, 1974. — October 21, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, &
WILKINS, JJ.

*Jurisdiction,* Delinquent child.  *Superior Court,* Jurisdiction.  *Evidence,* On cross-examination, Judicial discretion, Failure to produce witness. *Delinquent Child.  Constitutional Law,* Due process of law.

The Superior Court had jurisdiction to try a defendant on indictments for rape and armed robbery where original delinquent child complaints were dismissed on a finding by a Juvenile Court judge at a hearing on the complaints that the defendant was not a fit subject for commitment to the Department of Youth Services and that such a determination was in the best interest of the public; there was no merit in contentions by the defendant that his constitutional rights were violated and the dismissal of the delinquent child complaints was therefore invalid in that he was not given specific notice, apart from that furnished by G. L. c. 119 § 61, itself, that the issue of dismissal might be considered at that hearing and in that a statement by the judge of his reasons for the dismissal was lacking.  [287-288]

Where it appeared that rapes and an armed robbery were perpetrated by two men in a lighted apartment over a period of forty-five minutes, that the opportunity of the victims to observe the assailants was substantially the same as to both assailants, that the victims persistently and positively identified two certain men as the assailants up to the morning on which trial of such men for the rapes and the robbery was to commence, when the victims stated that they were mistaken in and withdrew their identification of one of the men, that the trial then proceeded against the other man as the sole defendant, and that at the trial the victims steadfastly identified that defendant, it was reversible error in the circumstances for the judge, on cross-examination of the victims by that defendant's counsel, to exclude as relating only to a collateral matter questions about the victims' misidentification of the former codefendant. [288-291] TAURO, C.J., joined by REARDON and BRAUCHER, JJ., dissenting.

General Laws c. 119, § 61, permitting dismissal of a juvenile complaint "if the court is of the opinion that the interests of the public require that . . . [the child] should be tried for . . . [the charge alleged in the

complaint] instead of being dealt with as a delinquent child," is not unconstitutional for vagueness. [287-288]

Discussion of when it is proper at a criminal trial for the court to allow comment to the jury, either in the prosecutor's argument, or in the charge, that the jury might draw negative inferences from a failure by the defendant to call available witnesses to corroborate an alibi. [293-295]

INDICTMENTS found and returned in the Superior Court on April 12, 1972.

The cases were tried before *Forte,* J.

*Jonathan Shapiro* for the defendant.

*Elizabeth A. Casey,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, J. The defendant challenges, under G. L. c. 278, §§ 33A-33G, his convictions of rape and armed robbery alleging certain errors of both a procedural and substantive nature. We reverse the convictions and remand the cases for a new trial in the Superior Court for reasons that will appear below.

The parties appear to agree that the procedural history of the cases is as follows, although not all of it may be gleaned from the record. The defendant was originally arrested on February 19, 1972. On February 22, 1972, delinquent child complaints were issued against him by the Boston Juvenile Court charging him with delinquency by reason of rape, armed robbery, and entering a dwelling house while armed with intent to commit a felony. After a hearing in the Juvenile Court on March 31, 1972, the delinquent child complaints were dismissed on the judge's finding that the defendant was not a fit subject for commitment to the Department of Youth Services and that such a determination was in the best interest of the public. Criminal complaints were immediately issued, and the defendant was bound over to the Superior Court after waiving a preliminary hearing.

On April 12, 1972, the defendant was indicted by a Suffolk County grand jury for the same three charges on which he had been bound over. Thereafter the indictments were tried before a jury. At the close of the Com-

monwealth's case, the defendant's motion for a directed verdict was allowed on the indictment charging him with entering a dwelling house while armed with intent to commit a felony. He was convicted by the jury on the other two indictments and eventually resentenced by the Appellate Division of the Superior Court to a twelve to twenty year term on the rape charge and a concurrent five to ten year term on the armed robbery charge, to be served at Massachusetts Correctional Institution, Walpole.

We state the evidence as testified to by the Commonwealth's witnesses in so far as necessary to a consideration of the appeal. On February 5, 1972, the victim (Carol) returned home from a brief shopping trip about 7:25 P.M. and was asked by one of two men standing in front of her apartment building if they could enter to get warm. At the trial she identified one of these men as the defendant.[1] After some hesitation, she let them in. As Carol was going upstairs, the other man asked to come in and have a glass of water. Again, after some hesitation, she acquiesced. After entering he received permission from Carol's husband, Gary, for the defendant to enter. As the two men were apparently preparing to leave, the defendant pulled a knife out of his sleeve and ordered Carol to join Gary on the couch. Thereafter, $2 was taken from Gary, who was then bound and gagged, each of the two men raped Carol, and the victims were left in the bathroom. When the two men had left, the victims discovered their tape recorder, some money and other items were missing. The entire incident took about forty-five minutes. Lights were on in every room of the apartment.

The police were called, and the victims gave a description of their assailants. The defendant was described as being a black male "twenty-one years, six feet, medium complexion, medium build, wearing three quarter length brown coat, gray and black wool Cossack hat."

---

[1] In summarizing the evidence, we refer to one of the assailants as "the defendant" simply to distinguish one assailant from the other, as did the victims in their testimony. The defendant, of course, denies that he was present.

Two weeks later, as the victims were walking near their apartment, they thought they saw the two men standing under a lit street light. They went straight home and called the police, who arrived shortly. Gary went with them to search for the men who were located a short distance from where they had originally been sighted by the victims. The two men were then arrested. One was the defendant.

The victims persisted in their positive identifications of the two men throughout the Juvenile Court proceedings. Then, on the morning the trial in the Superior Court was to begin, they stated that they were mistaken in their identification of the other man and withdrew that identification. The trial then proceeded against the defendant alone. We are reversing the convictions because the trial judge erroneously excluded, in cross-examination of the victims by defense counsel, questions related to the mistaken identification.

1. The defendant's first assignment of error alleges that the trial court was without jurisdiction to try him, as the dismissal of the delinquent child complaints by the Boston Juvenile Court was invalid. He urges that this is so because he was not provided either with specific formal notice that at the March 31 hearing the issue of dismissal would be considered or with a statement of reasons for the waiver of jurisdiction, both allegedly in violation of his constitutional rights.

As the defendant recognized in his brief, we have dealt with these issues in several recent cases. We have held that adequate notice that dismissal of the complaints may be taken up in the Juvenile Court hearing is provided by G. L. c. 119, § 61, itself. *A Juvenile, petitioner,* 364 Mass. 531 (1974). Cf. *Commonwealth* v. *A Juvenile,* 363 Mass. 640, 641-642 (1973). As to the necessity for a statement of reasons, we held in *Commonwealth* v. *Roberts,* 362 Mass. 357, 368-369 (1972), that "no constitutional rights of the defendant were violated . . . by the failure of the Boston Juvenile Court judge to file a written statement of his findings and reasons for dismissing the juvenile complaint." The statutory standard for this decision, "the

interests of the public," G. L. c. 119, § 61, was upheld earlier this year against a challenge that it was unconstitutionally vague. A *Juvenile, petitioner,* 364 Mass. 531 (1974). The defendant would have us reconsider and overrule these decisions. We instead choose to reaffirm them.

2. At numerous points in the cross-examination of the victims, who were, of course, the mainstay of the Commonwealth's case, defense counsel attempted to undercut the effect of their unequivocal identification of the defendant by questioning about their prior identification of the other assailant. Each time the trial judge sustained an objection to the line of questioning. His remarks in doing so indicate that his ruling was that this was a collateral matter.[2]

The Commonwealth contends that the prior misidentification of the other assailant was a collateral matter in that it did not directly tend to prove the guilt or innocence of the defendant. Theoretically this may be true. However, we are not persuaded by the Commonwealth's argument that this was the type of collateral inquiry, if collateral at all, which may be properly excluded in the judge's discretion.[3] The excluded questions were closely related to the crucial jury issue whether the defendant had been correctly identified by the victims.

Both Carol and Gary were steadfast at the trial in their identification of the defendant. The Commonwealth's case stressed the victims' lengthy observation of the defendant at close hand and in good light and especially their

---

[2] "Let's try one case at a time." "[W]hat the other man looks like is not involved in this case. . . . I'm going to ask the jury to concentrate on this defendant, and not go and concentrate on other people." "Now, you are not going into any other case except this case." "We are trying this case and not any other case. There is another defendant, but that is a separate case entirely."

[3] It is frequently stated that the extent to which cross-examination in collateral areas is permissible rests in the discretion of the trial judge. *Commonwealth* v. *Hunt,* 4 Gray 421, 423 (1855). *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942). In the instant cases the application of that rule is not particularly useful. The more decisive factors are the proximity of the excluded inquiry to the issue of identification, and the likelihood that the excluded testimony may be of substantial assistance to the jury in reaching their conclusions.

unwavering certainty. The defendant offered an alibi defense and thus the jury were presented with the clear-cut choice of which witness to believe. The record does not indicate that either victim had a better opportunity to observe the defendant than the other assailant. On the contrary, there is every indication that the opportunity of the victims to observe and thus identify the two criminals was substantially the same as to both criminals. In so far as the record discloses, every factor which made it possible for the victims to identify one of the two criminals, or to be mistaken as to the identity of one, applied equally to the other criminal. Therefore, those factors which caused the victims mistakenly to identify one participant would be relevant in assessing the reliability of the identification of the defendant. We emphasize the significant fact that the mistaken identification had been made under oath.

The judge showed a traditional concern that the jury should not be confused by the introduction of "a separate case entirely" or "any other case except this case." However, there appears to be no real danger of such confusion in this case, where the circumstances of the robbery and rape were such that a similar opportunity to observe and identify existed with respect to both assailants. Nor does it seem likely that introduction of the disputed line of inquiry would cause undue delay of the trial, or unfair prejudice to the Commonwealth's case.

It is true that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge, not subject to revision unless prejudice is shown to a party by reason of too narrow or too great breadth of inquiry." *Commonwealth* v. *Underwood,* 358 Mass. 506, 513 (1970), quoting from *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). In accordance with this rule, we have in most cases (e.g., *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486 [1925]; *Commonwealth* v. *Granito,* 326 Mass. 494, 496 [1950]) held that limits imposed on cross-examination were proper and within the scope of the trial judge's discretion. However, in some

instances we have ruled the opportunity for full and fair cross-examination was erroneously denied. *Gossman* v. *Rosenberg,* 237 Mass. 122, 124 (1921). *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942). *Commonwealth* v. *Roselli,* 335 Mass. 38, 40 (1956). *Commonwealth* v. *A Juvenile,* 361 Mass. 214, 218 (1972). The difficulty is in determining the line between the two classes of cases.

In this context, it seems that a showing that the two principal Commonwealth witnesses had mistakenly identified a second man as the other assailant whom they had seen under identical circumstances as the defendant might well have been substantially helpful to the defendant's case. "Serious damage to the strength of the State's case would have been a real possibility had . . . [the defendant] been allowed to pursue this line of inquiry." *Davis* v. *Alaska,* 415 U. S. 308, 319 (1974). We recognize also that the evidence might not have been helpful to the defendant, or might even have been turned to the Commonwealth's advantage, but the essential consideration is that it was for the jury to hear and evaluate it. The complete exclusion of the prior identification, subsequently withdrawn because of mistake, in our opinion prevented the defense from making an effective challenge through full cross-examination of the reliability of the victims' identification of the defendant. As a result, the defendant's right to a full and fair cross-examination was substantially prejudiced. As we said in *Commonwealth* v. *Roselli,* 335 Mass. 38, 40 (1956): "Where, as here, identification was an important issue, the defendant undoubtedly had the right to show that . . . [the victim's] identification of him was unreliable and that she had on a prior occasion identified a person other than those named by her at the trial."

We are of the opinion that the defendant on the facts of these cases incurred substantial prejudice from the restrictions placed on defense counsel's cross-examination of the Commonwealth's two principal witnesses. Accordingly, the defendant is entitled to a new trial.

We have no intention here of setting new and restrictive perimeters to the trial judge's usual discretionary control

over the limits of cross-examination. Rather, we have concluded that the special circumstances of these cases required greater latitude than the judge permitted.

In view of our conclusions, we need not consider the additional argument of the defendant that the restriction of the scope of his counsel's cross-examination of the Commonwealth's two principal witnesses effectively denied him his Sixth Amendment right of confrontation. Cf. *Commonwealth* v. *Johnson,* 365 Mass. 534 (1974); *Douglas* v. *Alabama,* 380 U. S. 415, 418 (1965); *Chambers* v. *Mississippi,* 410 U. S. 284 (1973); *Davis* v. *Alaska,* 415 U. S. 308 (1974).

3. That the Commonwealth improperly questioned the two defense witnesses, the defendant and his mother, on their testimony in Juvenile Court is agreed by both parties. Such inquiry is subject to the provisions of G. L. c. 119, § 60.[4] The defendant failed to save his right to appellate review of this error by an exception, and therefore we need not consider it. *Commonwealth* v. *Myers,* 356 Mass. 343, 346 (1969). *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 (1972). However, we note that, were appellate rights properly saved, the error would likely have required reversal. See *Commonwealth* v. *A Juvenile,* 361 Mass. 214, 217-218 (1972). Cf. *Commonwealth* v. *Morrison,* 1 Mass. App. Ct. 632 (1973).

4. The defendant assigns as error the judge's charge to the jury as to proof beyond a reasonable doubt. This issue requires no discussion here, particularly in view of our discussions of the concept in a number of recent cases. See

---

[4] This statute, as amended by St. 1948, c. 310, § 6, provides in pertinent part: "An adjudication of any child as a wayward child or delinquent child under sections fifty-two to fifty-nine, inclusive, or the disposition thereunder of any child so adjudicated or any evidence given in any case arising under said sections, shall not be lawful or proper evidence against such child for any purpose in any proceeding in any court, and records in cases arising against any child under said sections shall not be received in evidence or used in any way in any such proceeding, except in subsequent proceedings for waywardness or delinquency against the same child and except in imposing sentence in any criminal proceeding against the same person."

*Commonwealth* v. *Libby,* 358 Mass. 617, 621 (1971); *Commonwealth* v. *Bumpus,* 362 Mass. 672, 681-682 (1972); *Commonwealth* v. *Bjorkman,* 364 Mass. 297, 308-309 (1973); *Commonwealth* v. *Ferguson,* 365 Mass., 1, 12 (1974).

5. The final objection and exception argued before us relates to that part of the judge's charge which instructed the jury that they might draw a negative inference from the defendant's failure to call witnesses other than his mother to corroborate his alibi. Although we find no error in this aspect, we discuss the matter because it may recur at a new trial of the indictments. The negative inference involved is that a party's failure to produce those persons who could clarify or support that party's version of the facts permits the jury to infer that the absent witnesses would, in truth, testify adversely to that party's interest. By extension this may lead the jury to conclude that the party's version of the facts is untrue.[5] We have in a series of cases, both civil and criminal, permitted, when justified, comment on a party's failure to call witnesses. Compare *Commonwealth* v. *Smith,* 342 Mass. 180, 186-187 (1961), and *Commonwealth* v. *DeCaro,* 359 Mass. 388, 391-392 (1971), with *Commonwealth* v. *Domanski,* 332 Mass. 66, 70-71 (1954), and *Commonwealth* v. *Jones,* 355 Mass. 170, 177 (1969). See, generally, *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502 (1960).

These cases and many others discuss at length the basis for the inference. No case purports to state those conditions required as a minimum before the inference is permissible. This may be attributed to the consideration that each case must be decided on its own facts. "Whether an inference can be drawn from the failure to call witnesses necessarily depends, as with inferences generally, upon the posture of

---

[5] Wigmore, Evidence (3d ed. 1940) § 285, suggests that an adverse inference as to the failure to produce an available witness is the most natural inference and concludes that it is reasonable to assume that the tenor of the omitted testimony would be unfavorable to the party's cause.

the particular case and the state of the evidence." *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222 (1942).

It would be redundant to restate the many points we have already expounded in the prior cases cited above. We reaffirm those principles. On the other hand, it may be useful to emphasize, with particular reference to the cases before us, some of the most important factors which the judge should consider in deciding whether comment is to be allowed.

First of all, the judge should consider the strength of the cases against the defendant. "The jury should ordinarily be instructed not to draw inferences from the neglect of a defendant to call witnesses, unless it appears to be within his power to call others than himself, and unless the evidence against him is so strong that, if innocent, he would be expected to call them." *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889).

Other important factors have been frequently discussed under the heading of "availability," although the term "control" is used in many such contexts. Basic to the inference is the existence of evidence of physical availability of the witness, and the likelihood that he can be produced by summons or otherwise. Additionally, the judge may consider whether the defendant has superior knowledge of the identity of the witness and his whereabouts. Although it has been frequently held that where a witness is equally available to either party no inference may be drawn against either for not calling him, there is no hard and fast rule to that effect. *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222 (1942). The inference has been permitted against the defendant, even in cases where the witness appeared to be equally available to both parties, when it also appeared that the posture of the case was such that the defendant would be naturally expected to call the witness. See *Commonwealth* v. *DeCaro,* 359 Mass. 388, 391-392 (1971). Where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the

defendant through witnesses other than himself, his failure in this respect may be deemed by the judge to be fair matter for comment. See *Commonwealth* v. *Domanski,* 332 Mass. 66, 70-71 (1954).

Examining these cases in the light of these factors and all the relevant circumstances, we conclude that the trial judge was warranted, in his discretion, in permitting the jury to draw an inference against the defendant. A strong case tending to prove guilt had been made out by the Commonwealth. The defense had shown evidence of the existence of alibi witnesses, and had conceded their physical availability. Although it appeared that the witnesses were equally available to the Commonwealth, it was natural and probable that the defendant, rather than the Commonwealth, would produce them before the jury. Conversely, it was not a natural expectation that the prosecution would introduce a witness who might establish an alibi for the defendant.

Even though comment may be warranted, it does not necessarily follow that it should, in the judge's discretion, be permitted. We have stated in a number of cases that the judge's discretion in allowing the inference should be applied cautiously and with a strict regard for the rights of persons accused. *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889). *Grady* v. *Collins Transp. Co. Inc.* 341 Mass. 502, 506 (1960). The reasons for caution are apparent. The effect of the comment may be substantial in the jury's deliberations. An inference which is unfairly urged or drawn may be decisive in the case. The failure to produce a witness may not necessarily be inconsistent with innocence of the defendant. A witness may be withheld because of his prior criminal record, or because he is susceptible to cross-examination on collateral issues, or for other tactical reasons. For the same reasons it may be tactically unwise for the defendant to offer explanation to the jury of the reasons for his failure to produce the witness. Considerations of fairness may indicate that the defense should be allowed to represent the relevant circumstances to the judge, outside of the hearing of the jury, and in aid of the

judge's ruling. All of these considerations may assume added importance where the comment of the prosecutor in argument is followed by a charge by the judge which permits the inference or where, as in the instant cases, the matter originates in the charge to the jury.

*Judgments reversed.*
*Verdicts set aside.*

TAURO, C.J. (dissenting, with whom Reardon and Braucher, JJ., join) In my view the majority opinion without good reason departs from the long established rule concerning the discretionary power of a trial judge as to the *extent* of cross-examination on collateral matters and I therefore dissent, for the following reasons.

1. Two rules emerge from the many Massachusetts cases dealing with the discretionary power of the trial judge as to the extent of permissible cross-examination of a witness on "collateral"[1] matters. The general rule gives the trial judge wide discretion in limiting or preventing cross-examination of this nature. The judge will be reversed only if he has abused his discretion, that is, if he has made a decision "that no conscientious judge, acting intelligently, could honestly have . . . [made]." *Davis* v. *Boston Elev. Ry.* 235 Mass. 482, 502 (1920). See, for the general rule, *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486 (1925); *Commonwealth* v. *Granito,* 326 Mass. 494, 496 (1950). But it has also been said that the general rule "has no application where alleged *contradictory statements* of a witness relate to the main issue that is being tried" (emphasis added). *Commonwealth* v. *A Juvenile,* 361 Mass. 214, 218 (1972). See, e.g., *Commonwealth* v. *West,* 312 Mass. 438, 440 (1942). The defendant is said to be entitled to cross-examine in this situation as a matter of right.

---

[1] Wigmore, Evidence (3d ed. 1940) § 1003, indorses the following test (definition) of collateralness: "Could the fact, as to which error is predicated, have been shown in evidence for any purpose *independently of the contradiction?*" (emphasis added).

2. Only one of the two required elements of the exception to the general rule is to be found in the instant cases. No doubt, the identifying witness/victim was testifying as to the main issue being tried — whether it was the defendant who had raped her. However, the defendant did not seek to introduce prior or subsequent action or statements of the witness which stood *in contradiction* to any of her testimony. On direct examination, she unequivocally identified the defendant as the man who had raped her. The defendant wished to bring out on cross-examination that the witness had earlier misidentified the defendant's alleged accomplice. While this occurrence may have served to undermine the witness's general credibility in the judge's mind, it does not even in the broadest sense *contradict* her testimony that she was positive that the *defendant* had raped her. It is not as if she had earlier expressed doubt as to the defendant's identity or, in the extreme, had declared her assailant to have been someone else. In short, her alleged earlier misidentification of the defendant's alleged accomplice is separate from — *not in contradiction to* — her identification of the defendant.

3. In all criminal cases where the defendant was said to have a "right" to cross-examine on a collateral issue, it was intended to introduce an earlier statement or action of the witness which contradicted or was contrary to testimony given on direct examination. This was explicitly stated to be the case in *Commonwealth* v. *A Juvenile, supra,* at 218, where the defendant had been prevented from introducing in the Superior Court contradictory or inconsistent statements made by prosecution witnesses in prior District Court proceedings. *Commonwealth* v. *West,* 312 Mass. 438 (1942), also fits this pattern. The key witness for the Commonwealth testified that the defendant, accused of impersonating a police officer and of extortion by threatening to accuse another of a crime, had initiated a friendship with him and had made "indecent proposals," which he, the witness, had rejected. Thereafter, continued the witness, the defendant began to extort money from him in

exchange for not being arrested. In sum, the witness claimed to be an innocent and resisting victim of the defendant's extortion scheme. Later, the defendant himself had testified that in fact the witness had initiated the friendship and had sought to make it an "immoral" one. In this regard, he sought to impeach the witness's testimony by asking him the following question: "[Is it not true that just prior to the defendant's arrest, you said,] 'I'm sorry I have to do this to you Bill [the defendant], but it's either me or you; I got a 9-month suspended sentence once before for picking up a fellow in the subway'?" While not a contradiction in plain terms of the witness's direct testimony that he was a resisting victim of the defendant's scheme, the statement, containing an apology to the defendant and a reference to an earlier "indecent" relationship, is inconsistent with this version of events. As such, despite the evidentiary problem about indirectly introducing a prior conviction, we ruled that the defendant should have been allowed to ask the question. Thus the case (and others cited in the majority opinion) is clearly distinguishable from the instant cases.

4. In the last analysis, we are here dealing with the testing of the witness's power of identification, observation, and memory. An examination of the transcript of the evidence clearly indicates that there was ample cross-examination permitted on this score. It is universally established that the *extent* of such cross-examination is discretionary with the trial judge. Moreover, the proffered cross-examination attempted to raise other collateral issues of more than passing importance. The subject of the alleged misidentification was not the defendant but, rather, the codefendant whose case had been severed and who was to be tried in a separate case. The allowance of such cross-examination necessarily would have raised a confusion of collateral issues, which is precisely why such questioning is usually left to the judge's discretion.

"While the ... [trial judge] could properly have permitted such testing of the capacity of the witness to observe

and recall, a court has wide discretion in permitting, prohibiting or curtailing such excursions." *United States* v. *Evans,* 359 F. 2d 776, 777 (3d Cir. 1966).