COMMONWEALTH *vs.* CARL Z. PETTIJOHN.

Suffolk.    March 7, 1977. — July 6, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Identification.    Evidence,* Judicial discretion, Collateral matter, Identification.

At the trial of an indictment for armed robbery, there was no error in the denial of the defendant's motion to suppress an out-of-court photographic identification.  [27-28]
At the trial of an indictment for armed robbery, the judge did not abuse his discretion in refusing to allow the defendant to call a witness who had been mistaken in his first attempt to select a photograph of the defendant from a number shown to him by police and whose out-of-court identification testimony had previously been suppressed on the defendant's motion where that witness's mistake in identifying the defendant was not relevant in assessing another witness's identification of him.  [28-32]

INDICTMENT found and returned in the Superior Court on September 25, 1975.

The case was tried before *Roy,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Maurice F. Ford* for the defendant.

*John A. Kiernan,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   This is an appeal under the provisions of G. L. c. 278, §§ 33A-33G, from a conviction on a charge of armed robbery, after a jury trial in the Superior Court. Before the trial the judge denied the defendant's motion to suppress the testimony of the witness David Smith, and the defendant excepted. The judge allowed the motion to suppress as it applied to the testimony of the witness Frank Griffin.

During the trial, and after the Commonwealth rested, the trial judge ruled that the defendant could not call as a defense witness Frank Griffin, whose testimony had previously been suppressed on the defendant's motion.

The defendant's conviction was affirmed on appeal by the Appeals Court, 4 Mass. App. Ct. 829 (1976), and this court granted the defendant's application for further review.

The defendant argues two issues before this court: that the judge was in error in permitting before the jury the identification of the defendant by the witness Smith, and that the judge was also in error in excluding the testimony of the witness Griffin, as proffered by the defendant. We conclude that there was no error. We reach this conclusion on substantially the same reasoning applied by the Appeals Court, as more fully expounded in this opinion.

1. We turn first to the issue whether there was error in the judge's denial of the defendant's motion to suppress the identification testimony of the witness Smith. Clearly there was no error.

We summarize the contested testimony of Smith as it was presented at the hearing on the motion to suppress. Smith testified that at 3:30 P.M., September 8, 1975, while on duty as a security guard for New England Wholesale Drug Co. in Dorchester, he was robbed of his weapons; that the next morning he was shown photographs at New England Wholesale Drug Co., including a photograph marked 1G which he identified as the picture of the person who robbed him; that he saw other photographs at the police station before that and 1G was not among them but he did not know if the other photographs marked as

exhibits were among the photographs he was shown at the police station or later at the New England Wholesale Drug Co., but they resembled them; that he knew the defendant's face as he was from the neighborhood, and that he did not recall if a photograph marked 1A was among the photographs shown him by the police on the morning of September 9, 1975.[1]

Boston police Officer Ivanoski testified that on September 9 he showed Smith nine photographs and Smith had selected 1G.

There was no showing that the photo identification process was in any way suggestive as it related to the witness Smith. The judge was correct in his ruling denying the motion to suppress. *Commonwealth* v. *Botelho,* 369 Mass. 860, 867-868 (1976).[2] *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 533-534 (1975). *Simmons* v. *United States,* 390 U.S. 377 (1968).

2. We turn now to the exclusion by the judge of Griffin's testimony. The testimony of Griffin, as presented at the pre-trial hearing of the defendant's motion to suppress, was as follows. Griffin, an employee of the New England Wholesale Drug Co., testified that on September 8, 1975, he observed a man take a gun from David Smith, a security guard for New England Wholesale Drug Co. The next morning, September 9, Officer Ivanoski showed a group of photographs marked 1A to 1I as exhibits. Griffin pointed to one of the photographs and said, "I think it's him," referring to 1A, and the police officer said, "No, it's not," and Griffin said, "It's definitely that one," referring

---

[1] The emphasis on 1A and 1G in the examination of Smith, particularly as compared to the testimony of the witness Griffin, is as follows: 1G was the picture of the defendant; 1A was a photograph of a man mistakenly identified by Griffin as the defendant. Smith, however, made no misidentification of any kind during the whole procedure.

[2] The record discloses that the confrontation between Smith and the robber was face to face and took a couple of minutes; the victim's opportunity to observe was extensive. The identification could be called a "reliable" one. Nevertheless, since there was no suggestive pre-trial procedure by the police, we need not consider the problem raised in the *Botelho* case at 867-874.

to 1G (the defendant's photograph), and the policeman said, "That's him."

The defendant was known to the witness for several weeks prior to the robbery in September. Griffin testified that beginning in the middle of August, he had seen the defendant pass along the street once or twice each day. Griffin had, on occasion, spoken with the defendant and called him by the name of "Bunny." The defendant in turn referred to Griffin as "Big Al." Griffin had on several occasions observed the defendant "hanging around" in the vicinity of 22 Angel Street, and thought he lived there. Griffin, on being asked by the judge whether if he had not seen the photographs he could identify the defendant, answered he thought he could.

The two photographs, 1A and 1G, selected by Griffin depict two different persons of strikingly similar appearance. The judge, after studying the array which was shown to the witnesses, and referring specifically to 1A and 1G, stated: "They are remarkably similar."

The judge found as fact that the police officer's statement to Griffin was suggestive, and allowed the defendant's motion to suppress Griffin's identification testimony at the trial. At the trial in chief the Commonwealth called as witnesses Smith and Officer Ivanoski, the same persons who had testified during the pre-trial hearing on the motion to suppress, and they testified in substance as they had during the hearing. Smith identified the defendant as the person who robbed him of his gun with a gun; he identified the defendant from photographs, and he stated he had seen the defendant on prior occasions. Officer Ivanoski testified as to the defendant's identification by Smith. On cross-examination, the judge excluded questions concerning Griffin's identification from the photographs, and accepted as an offer of proof Griffin's and Officer Ivanoski's testimony during the hearing on the motion to suppress.

After the Commonwealth rested, the judge called a conference. Counsel for the defendant indicated he intended to call Griffin as a defense witness. The judge ordered that he not be called, based on counsel's representation

that he intended to bring out facts substantially the same as Griffin's testimony during the hearing on the motion to suppress, and accepted Griffin's testimony during that hearing to be the defendant's offer of proof. The defendant rested and the jury returned their verdict of guilty.

In our view the exclusion of Griffin's testimony was within the judge's discretion. The trial judge has broad power in determining relevancy, and the extent to which evidence of collateral matters will be admitted has traditionally rested within his discretion. *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). *Commonwealth* v. *Hunt*, 4 Gray 421, 423 (1855). "While the defendants are entitled to reasonable latitude in developing inconsistencies in a witness' testimony, the extent to which collateral matters shall be explored is in the discretion of the judge." *Commonwealth* v. *Doherty*, 353 Mass. 197, 213-214, cert. denied, 390 U.S. 982 (1967).

In essence, the defendant asserts the right to impeach the witness Smith by showing that the witness Griffin was mistaken in his first attempt to select a picture of the person known to him as "Bunny." We fail to see the relevance of Griffin's mistake on the issue of Smith's credibility or reliability. In these circumstances the judge was clearly warranted in ruling, as he impliedly did, that the testimony of Griffin had little, if any, probative force for the defense. Nor do we agree that there was any Federal constitutional right under the Sixth Amendment, as argued by the defendant, to present evidence which was not probative, and hence not relevant. Cf. *Washington* v. *Texas*, 388 U.S. 14, 16-23 (1967).

*Commonwealth* v. *Franklin*, 366 Mass. 284 (1974), relied on by the defendant, is distinguishable. In *Franklin*, two victims having identical opportunities to observe their assailants under identical conditions at first made positive identifications of both Franklin and another man, including an encounter at a juvenile proceeding. However, on the day of trial, both victims recanted their identifications of the second defendant, and the trial proceeded against Franklin alone. On cross-examination of the victims by

defense counsel, questions relating to the mistaken iden-
tification were excluded. In reversing the defendant's con-
viction this court stated at 289, "The record does not
indicate that either victim had a better opportunity to
observe the defendant than the other assailant. On the
contrary, there is every indication that the opportunity
of the victims to observe and thus identify the two crim-
inals was substantially the same as to both criminals. In
so far as the record discloses, every factor which made it
possible for the victims to identify one of the two crim-
inals, or to be mistaken as to the identity of one, applied
equally to the other criminal. Therefore, those factors
which caused the victims mistakenly to identify one par-
ticipant would be relevant in assessing the reliability of
the identification of the defendant. We emphasize the sig-
nificant fact that the mistaken identification had been
made under oath."

The decision in *Franklin,* based as it was on the special
circumstances of that case, is not apposite here. Most im-
portant, the witness Griffin in the instant case, unlike the
witnesses in the *Franklin* case, was prepared to make an
in-court identification of the defendant as the robber. In
the instant case, also unlike *Franklin,* there were signifi-
cant differences between the respective opportunities of
the two witnesses to observe and recollect the facial char-
acteristics of the robber. It was to "usual" cases like the
instant one that we had reference when we said in *Frank-
lin* at 290-291: "We have no intention here of setting new
and restrictive perimeters to the trial judge's usual dis-
cretionary control over the limits of ... [examination on
collateral matters]."

We assume without deciding that the defendant is cor-
rect in his premise that, having prevailed on the motion
to suppress as to the testimony of Griffin, the defendant
was privileged to make a timely waiver of his rights as to
the entire suppression issue. This privilege, however, is
not controlling over the judge's right to exclude evidence
as not probative, and hence not relevant. We have in mind,
also, that the defendant was claiming the privilege of pre-

senting as part of his case a witness whose testimony (unknown to the jury) had been excluded, on motion of the defense, when offered by the Commonwealth. In exercising his discretion, when the witness was offered by the defendant, the judge could properly consider that a tactical advantage unfair to the Commonwealth might accrue to the defendant if Griffin were allowed to testify, an unfairness which might be difficult or impossible to overcome with special instructions to the jury.

*Judgment of the Superior
Court affirmed.*