COMMONWEALTH *vs.* WILLIAM McGOWAN.

Middlesex. April 6, 1987. — July 6, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*False Entry in Corporate Records. Due Process of Law,* Conduct of prosecutor. *Practice, Criminal,* Grand jury proceeding, Indictment, Evidence obtained in civil action. *Grand Jury. Evidence,* Grand jury proceeding, Impeachment of credibility. *Witness,* Impeachment.

The institution of new criminal charges after dismissal of earlier, unrelated charges for want of prosecution gave rise to no presumption of prosecutorial vindictiveness requiring dismissal of the new charges. [387]

A criminal defendant made no showing that the integrity of grand jury proceedings had been impaired, so as to require dismissal of indictments against him, by reason of the existence of a civil action arising out of the same alleged events as the criminal charges; by fundamental unfairness in the prosecutor's failure to inform the grand jury of the defendant's version of events; or by the prosecutor's failure to call as a witness before the grand jury a certain attorney whose evidence allegedly would have undermined the credibility of the principal Commonwealth witness. [387-389]

Evidence at a criminal trial was sufficient to warrant the defendant's convictions for violations of G. L. c. 266, § 67, which punishes the making of a false entry in corporate records by a corporate officer with intent to defraud; and there was no merit to the defendant's contentions either that the Commonwealth was required to prove the elements of the crime of forgery or that the statute was vague as applied to him. [389-390]

The judge at a criminal trial properly exercised his discretion to exclude evidence offered to impeach a Commonwealth witness, where the evidence did not bear on any central issue in the case and, in any event, did not directly contradict anything to which the witness had testified. [390-391]

A prosecutor's statement in closing argument, as to which the defendant expressly declined to request a curative instruction, did not require reversal of the defendant's convictions. [391]

INDICTMENT found and returned in the Superior Court Department on September 27, 1984.

The case was tried before *Hiller B. Zobel,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert S. Sinsheimer (Walter H. McLaughlin, Sr.,* with him) for the defendant.

*Natalea Skvir,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted on four counts of an indictment charging him with making false entries in the corporate records of Traffic and Distribution Services, Inc. (TDS), in violation of G. L. c. 266, § 67 (1984 ed.).[1]

TDS, a service corporation in the business of paying and auditing freight bills for other companies, was formed in 1970 by Arthur Finger and four others. Finger served as its president and owned a majority of TDS stock in 1980 when the events occurred which are the subject of the counts on which the defendant was convicted. The defendant was a stockholder, a director, and the treasurer of TDS.

The charges on which the defendant was found guilty involved four checks written and signed by him. As each company check was written, the date, amount, and payee of the check was automatically entered by carbon on the company's cash disbursement journal. The journal was designed to indicate also the identification number of the corporation's account from which the disbursement was to be made. The defendant does not deny that the four checks he wrote paid certain of his personal credit card bills (Visa, Diners Club, American Express). The defendant indicated on the journal as to each check that it was to be charged to a corporate account used to pay tariffs. Finger testified that the defendant was not authorized to write the checks to pay his personal expenses.

We transferred the defendant's appeal here on own motion. We affirm the convictions.

---

[1] He was acquitted of fraudulently appropriating without authority money or property of TDS, and of six counts of the indictment charging violations of G. L. c. 266, § 67. He received concurrent suspended sentences on the four counts on which he was convicted.

1. We discuss first the defendant's several arguments that the trial judge should have dismissed the indictments. Although the defendant moved to dismiss all the indictments, we need consider the question of the denial of his motions to dismiss only as to the counts of the indictment on which he was convicted.

The defendant asserts that the prosecution obtained the indictment in violation of his right to due process of law. He points out that a District Court judge had dismissed earlier charges against him for want of prosecution and argues that presumptive prosecutorial vindictiveness led to the seeking of the indictment. Because there was no earlier trial, the circumstances of this case seem closer to *United States* v. *Goodwin,* 457 U.S. 368, 381-382 (1982) (no presumption of vindictiveness when charges increased before trial; increased charges not dismissed), than to *Thigpen* v. *Roberts,* 468 U.S. 27, 30 (1984) (vindictiveness presumed when an indictment relating to the same occurrence was obtained "up[ping] the ante" after a conviction of a lesser offense was appealed). We need not decide the point because the events underlying the indictment involved in this appeal are unrelated factually to the earlier charges involving the alleged conversion of the proceeds of the sale of three motor vehicles owned by Finger and another in a partnership. The institution of new charges after the dismissal of earlier, unrelated charges does not by itself constitute presumptive vindictiveness which bars presentation of all future charges against a defendant.[2]

The defendant further argues that the indictment should be dismissed because the integrity of the grand jury was impaired. He made no showing that the Commonwealth knowingly presented false testimony to the grand jury for the purpose of

---

[2] The defendant was not entitled on speedy trial gounds to dismissal of the indictment on which he was convicted. It is not clear that the dismissal of the District Court complaints was based on the denial of the defendant's right to a speedy trial. In any event, the indictment on which he was convicted was not an offense related to the dismissed complaints. *Commonwealth* v. *Balliro,* 385 Mass. 618, 624 (1982). Only the same and related offenses are barred from future prosecution when a complaint is dismissed on speedy trial grounds. *Id.*

obtaining an indictment. See *Commonwealth v. Mayfield,* 398 Mass. 615, 621-622 (1986). The suggestion that this criminal proceeding provided Finger "with unfair and illegal leverage in the defense of a valid civil suit" (and thus the indictment should be dismissed) is not borne out in the record. Government prosecution of a civil case for the purpose of obtaining evidence for use in a criminal prosecution might require dismissal of criminal charges. See *Commonwealth* v. *Hogan,* 389 Mass. 450, 452 (1983). The existence, however, of a civil action arising out of the same facts did not impair the grand jury proceedings.

The defendant advances more substantial claims of impairment of the grand jury's integrity based on alleged errors of the prosecutor who presented the case to the grand jury. Any comprehensive assessment of these claims is hindered, however, because the defendant has chosen not to present us with a transcript of the entire grand jury proceeding. The defendant first contends that the prosecutor should have presented the defendant's version of the alleged incidents. The defendant declined an offer to appear before the grand jury, and he does not indicate precisely what the prosecutor knew and should have told the grand jury on his behalf. Without impliedly supporting the assertion that a prosecutor has an obligation in every case to give a potential defendant's version of the events to a grand jury, we simply conclude that in this case there is no showing of fundamental unfairness in the prosecution's failure to inform the grand jury of the defendant's version of the alleged incidents. Cf. *Commonwealth* v. *Connor,* 392 Mass. 838, 854 (1984) (prosecution must make grand jury aware of evidence that would greatly undermine the credibility of an important witness whose testimony is likely to affect their decision).

The defendant says that the prosecutor should have called a particular attorney to testify before the grand jury because he had exculpatory evidence to offer. The defendant does not spell out, with appropriate record references, what the prosecutor knew, or should have known, the attorney would have told the grand jury relating to the charges now relevant on

appeal. The only evidence that seems to relate to these charges involves the possible impeachment of Finger, the principal witness before the grand jury. The grand jury knew of the attorney and did not elect to call him on their own.

We cannot fairly conclude on this record that the attorney's impeachment evidence would have greatly undermined the credibility of the principal witness (see *Commonwealth* v. *Connor, supra*), and that its absence distorted the evidence so that, if it had been presented, the grand jury probably would have reached a different result. See *Commonwealth* v. *Mayfield, supra* at 622; *Commonwealth* v. *McGahee,* 393 Mass. 743, 746-747 (1985). Similarly, we see no basis for concluding that the Commonwealth improperly vouched for Finger in a way requiring dismissal of the indictment.

2. The defendant argues that the evidence did not warrant his conviction for violation of G. L. c. 266, § 67, on any of the four counts of the indictment on which he was found guilty. He argues that § 67 describes a crime analogous to the crime of forgery and that, under principles expressed in *Commonwealth* v. *Apalakis,* 396 Mass. 292, 297 (1985), it is clear that what he did did not constitute forgery.

Section 67, which is set forth in the margin,[3] is not analogous to a forgery statute. It involves, instead, the making of a false entry in corporate records by a corporate officer with the intent to defraud. The *Apalakis* opinion makes a clear distinction between forgery and the making of a false statement. *Id.* at 301. In that case, where the defendant, an employee of the Registry of Motor Vehicles, executed a genuine document but included in it a false statement, the court held there was no forgery proven and pointed to G. L. c. 268, § 6A (1984 ed.),

---

[3] "An officer of a corporation or an agent, clerk or servant of a person, firm or corporation who makes a false entry or omits to make a true entry in any book of such person, firm or corporation, with intent to defraud, and any person whose duty it is to make a record or entry of the transfer of stock, or of the issuing or cancelling of certificates thereof, or of the amount of stock issued by a corporation, in any book thereof, who, with intent to defaud, omits to make a true record or entry thereof, shall be punished by imprisonment in the state prison for not more than ten years or in the house of correction for not more than one year."

concerning the illegal making of a "false written report" by a government employee as arguably applicable to the defendant's conduct. *Id.* at 301. Chapter 266, § 67, is analogous to c. 268, § 6A, because § 67 states that a corporate officer "who makes a false entry" in corporate books with fraudulent intent commits a crime.

The defendant does not argue in so many words that the evidence did not warrant a finding beyond a reasonable doubt of violations of § 67 as we and the trial judge have construed it.[4] There was evidence that the defendant made false statements by indicating the tariff account as the one that should be charged for the amount of the checks he drew when, in fact, the payments were for personal expenses. Similarly, there was evidence of an intent to defraud the company.

The defendant expresses his argument for a required finding of not guilty as a claim that the statute was vague as applied. There is no record indication that this theory was presented to the trial judge in support of the motion for required findings of not guilty.[5] There is no sound basis, in any event, to conclude that the defendant was not on notice that § 67 proscribed the conduct for which the jury found him guilty. See *Commonwealth* v. *Jasmin,* 396 Mass. 653, 655 (1986).

3. We turn finally to alleged errors in the conduct of the trial. The defendant objects to the judge's refusal to permit him to introduce an allegedly prior inconsistent statement for the purpose of impeaching Finger. If the impeaching evidence directly related to Finger's testimony on a central issue in the case, the judge had no discretion to exclude it. See *Commonwealth* v. *Basch,* 386 Mass. 620, 623 (1982); *Commonwealth* v. *A Juvenile,* 361 Mass. 214, 218 (1972); *Commonwealth* v.

---

[4] The defendant does not challenge the judge's instructions on § 67. We need not pass on grounds for reversal raised for the first time in a reply brief. In any event, we find none of those belated arguments to be persuasive.

[5] The point was not raised in the defendant's motion for a required finding of not guilty or in its accompanying memorandum, nor was it raised in the defendant's initial posttrial motion for relief and its accompanying memorandum. It was first mentioned, as far as we can tell, in a supplemental posttrial memorandum.

*Allen,* 22 Mass. App. Ct. 413, 420 (1986). The fatal weakness in the defendant's argument is that there was no prior testimony by Finger to which the offered impeachment directly related, as both the colloquy following the Commonwealth's objection and Finger's testimony itself demonstrate. If the offered impeachment was contradictory of anything Finger testified to, it was at best indirectly so. Where, "as here the statements [were] not plainly contradictory, the judge has wide discretion." *Commonwealth* v. *Hesketh,* 386 Mass. 153, 161 (1982).

The defendant objects that the prosecutor's closing argument stated as a fact something not supported by the evidence. That challenged statement (concerning the defendant's conduct) may have been warranted as a reasonable inference from the evidence, but perhaps it went too far. Defense counsel noted the point but expressly declined to ask for a related curative instruction. The error, if any, was curable and certainly does not require reversal of the convictions.[6]

*Judgments affirmed.*

---

[6] The prosecutor's closing argument contained no improper comment on the defendant's failure to testify. If there was an objection based on this ground (and it seems there was not), it is an objection which the defendant withdrew.

The defendant requested and the judge gave an instruction on the defendant's not testifying. That instruction, to which there was no objection (or perhaps one which was withdrawn), was adequate. It seems somewhat better, however, to tell the jury that a defendant is *exercising,* rather than *relying on,* his right not to testify.