NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-185

COMMONWEALTH

vs.

LUIS ORTIZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After jury trial in the District Court, the defendant was convicted of indecent assault and battery on G.M. On appeal, the defendant argues that the judge erred in (1) admitting in evidence unduly prejudicial medical records, and (2) precluding him from impeaching G.M. with a prior inconsistent statement. We vacate the defendant's conviction.

Background. In the light most favorable to the Commonwealth, the jury could have found the following facts. G.M. went to visit her friend, Marissa, in New Bedford. There, G.M. met Marissa's boyfriend -- the defendant -- and the defendant's cousin. The four started drinking at Marissa's home. G.M. became drunk and vomited, before passing out in Marissa's mother's bedroom.

Later on, at 4 A.M., G.M. woke up to the realization that the defendant was in the bed, had vaginally penetrated her while she slept, and was inside of her. G.M. jumped out of bed and asked the defendant what he was doing. The defendant said he thought G.M. was Marissa, his girlfriend. Thereupon, the defendant quietly slipped out of the bedroom and shut the door.

G.M. got her things together to leave and came across the defendant in the dining room. The defendant started apologizing, and G.M. slapped him. G.M. called her father, who lived nearby, and went to see him to tell him what had happened. While at her father's home, G.M. and her father called the police, and G.M. later went to a hospital to be examined. The police then went to Marissa's home and arrested the defendant. The defendant told the police that the victim came on to him.

Discussion. 1. Medical records. The Commonwealth moved to admit medical records and use the statements within them as substantive evidence. The Commonwealth argued that the statements within the medical records were substantively admissible as an exception to the hearsay rule. See G. L. c. 233, § 79. The defendant objected on the ground that the evidence was irrelevant and unfairly prejudicial, especially since the sole contested issue was consent and the records had no bearing on that issue. Without specifically addressing relevance or prejudice, the judge ruled that information within

2

the records was admissible as an exception to the hearsay rule, provided that it was part of the victim's diagnosis and treatment.

After the judge denied the defendant's motion to exclude the records in toto, the judge went through each page of the records with the parties, entertaining objections as to individual portions of the records.  The defendant specifically objected to the use of the word "assailant" on the forms. Defense counsel renewed his objection to the records in their entirety before the four-page redacted medical records were introduced at trial.  The defendant's objection to the medical records was preserved.  See Commonwealth v. Grady, 474 Mass. 715, 719-720 (2016).  See also Mass. R. Crim. P. 22, 378 Mass. 892 (1979).  We therefore review for prejudicial error.  See Commonwealth v. Brum, 492 Mass. 581, 587 (2023).

On appeal, the defendant argues that, despite the redactions that the judge made, the medical records that went to the jury still contained more than twenty references reinforcing the concept that a sexual assault took place.  Particularly since the defense was consent, the defendant argues, the failure to make sufficient redactions was prejudicial error.  We agree.

In Commonwealth v. Dargon, 457 Mass. 387, 394-397 (2010), the Supreme Judicial Court considered the impact of language in medical records that appeared to assume that a sexual assault in

3

fact took place where that was the ultimate issue for the jury. That case involved the inclusion of a form filled out by a Sexual Assault Nurse Examiner (SANE) based on answers provided by the alleged victim, see id. at 390; the form sought details of the "assault" and the "assailant." Id. at 396. The court held that failure to redact such references was error. See id. Because the defendant had failed to preserve the objection at trial, however, the court reviewed the error for a substantial risk of a miscarriage of justice and determined that there was no such risk. See id. at 398.

This case involves the same sexual assault references found problematic in Dargon; more than twenty such references were included in the four pages of medical records that went to the jury in this case. The failure to redact was error. Since the objection was preserved, the question remains whether the error was prejudicial. See Commonwealth v. Lugo, 104 Mass. App. Ct. 309, 317 (2024), quoting Commonwealth v. Cruz, 445 Mass. 589, 591 (2005) (error not prejudicial if it "did not influence the jury, or had but very slight effect"). See also Kotteakos v. United States, 328 U.S. 750, 764-765 (1946).

As the courts have recognized, a statement in a medical record "enhanced with a cloak of professional and institutional authority, that the very crime which the prosecution is bound to prove has occurred, acquires considerable potency" (citation

4

omitted).[1]  Commonwealth v. DiMonte, 427 Mass. 233, 242 (1998).
The Commonwealth argues that the improper references in the
medical records did not likely influence the jury in light of
G.M.'s testimony, her father's first complaint testimony, and
the defendant's statement to the police that G.M. came on to
him.  But all of that evidence still reduces to a contest
between two differing accounts, with G.M.'s account obtaining
added weight from conclusory language in the medical records.
Where the defense was consent and the medical records had the
effect of assuming a sexual assault, we cannot say that failure
to redact was not prejudicial.

2.  Impeachment by prior inconsistent statement.  At trial,
G.M. testified that, on the night she stayed at Marissa's home,
she awoke to find the defendant having sex with her.  The
defendant attempted to impeach this testimony by eliciting
testimony from Marissa that G.M. had previously told her that,

---

[1] As the Commonwealth acknowledged at oral argument, the
medical records had marginal relevance.  The records simply
confirmed that G.M. had sexual intercourse, a fact not disputed
at trial.  However, the numerous references to "assault" and
"assailant" had the effect of transforming the sexual
intercourse into sexual assault, and thereby perhaps adding an
impermissible additional first complaint.  See Dargon, 457 Mass.
at 399-400 (if independently admissible evidence serves no
purpose other than to repeat fact of complaint and thereby
corroborate complainant's accusations, it is inadmissible unless
specifically designated as first complaint evidence).  Given the
minimal probative value of the medical records and the risk of
undue prejudice, it may have been prudent to allow the
defendant's motion to exclude the records in their entirety.

5

when she awoke, she thought that the person having sex with her was the defendant's cousin.  When the Commonwealth objected, the judge stated that defense counsel was attempting to elicit evidence of G.M.'s sexual conduct with someone other than the defendant.[2]  The defendant explained that he was attempting to impeach G.M.'s credibility by showing that on a prior occasion, G.M. made a statement about the alleged sexual assault that was inconsistent with her trial testimony.  The judge sustained the objection.  On appeal, the defendant claims that this was error.

A prior inconsistent statement is one where "either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict."  Commonwealth v. Ortiz, 39 Mass. App. Ct. 70, 72 (1995), quoting Commonwealth v. West, 312 Mass. 438, 440 (1942).  "Extrinsic evidence of a prior inconsistent statement by a witness . . . is admissible."  Mass. G. Evid. § 613(a)(2) (2024).  When extrinsic evidence touches only on a collateral issue, a judge has the discretion to exclude it.  See Commonwealth v. Farley, 443 Mass. 740, 751 (2005); Mass. G. Evid. § 613(a)(4) (2024).  See also Commonwealth v. Hesketh, 386

_____

[2] The Commonwealth had previously moved in limine to exclude evidence in violation of the rape shield statute, G. L. c. 233, § 21B, which prohibits evidence of specific instances of a victim's sexual conduct in certain sexual assault prosecutions. See Commonwealth v. Jacques, 494 Mass. 739, 744 (2024).

Mass. 153, 161 (1982).  Where the evidence goes to a central issue in the case, however, a judge has no discretion to exclude it.  See Commonwealth v. Niemic, 483 Mass. 571, 580-581 (2019) (statements that would impeach credibility of key witness and which went to key issue in case were properly admitted).  See also Commonwealth v. McGowan, 400 Mass. 385, 390 (1987).

The defendant contends that the judge had no discretion to deny his attempt to impeach G.M. because the prior inconsistent statement went not only to the credibility of a key Commonwealth witness, G.M., but also to a key issue in the case, the alleged sexual assault.  However, the record is less than clear on whether the statement sought to be elicited was in fact inconsistent.  In the transcript capturing the defendant's offer of proof on this issue, there is an "inaudible" portion, making it difficult to discern the complete argument presented to the judge.  Additionally, the remaining offer of proof seems to suggest alternative scenarios -- one is that G.M. said she actually had sex with the defendant's cousin and the other is that G.M. said she only initially assumed the person was the defendant's cousin until she found out it was the defendant. The former theory would seem to conflict with the defendant's consent defense, instead offering an identity defense, and the latter theory would seem to have no bearing on consent.

7

On appeal, the defendant argues that G.M.'s statement that she thought it was the defendant's cousin penetrating her did go to the issue of consent, because the jury could have considered that G.M. initially consented to sexual intercourse when she thought it was the defendant's cousin but withdrew the consent when she realized it was the defendant.  We cannot say that the offer of proof made this theory clear to the judge.  On any retrial, the theory may, of course, be raised and considered anew.

Judgment vacated.

Verdict set aside.

By the Court (Sacks, Singh & Walsh, JJ.[3]),

Clerk

Entered: January 6, 2025.

---

[3] The panelists are listed in order of seniority.