## COMMONWEALTH *vs.* JAMES A. BRYER.

Bristol.    March 5, 1986. — July 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Comment by prosecutor, Continuance, Instructions to jury. *Evidence,* Failure to produce witness. *Motor Vehicle,* Operating under the influence.

At the trial of a complaint charging the defendant with operating a motor vehicle on a public way while under the influence of intoxicating liquor, the defendant's right to a fair trial was not abridged by the prosecutor's references to the failure of the defendant to call his roommate as a witness, where, although the roommate could not have fully corroborated the defendant's testimony, the defendant could naturally have been expected to call him to testify as to his perception of the defendant's state of intoxication as well as to other matters consistent with the defendant's testimony. [11-13]

At the trial of a complaint charging operation of an automobile while under the influence of intoxicating liquor, the judge did not abuse his discretion by denying the defendant a continuance, requested on the day of trial, to allow him to secure the attendance of a prospective expert witness, where the judge could have properly concluded that the proposed expert testimony would not materially aid the jury in resolving the issue of the defendant's intoxication and where, moreover, there already had been numerous trial delays attributable to the defendant. [13-16]

No substantial risk of a miscarriage of justice requiring reversal of a defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor was created by the judge's instructing the jury that operating under the influence means that the defendant, at the time of the incident, "was influenced in some perceptible degree," rather than instructing them, in language later prescribed by this court in *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), that, for a verdict of guilty the Commonwealth must prove "that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely," where the jury also found the defendant guilty of operating a motor vehicle negligently and the evidence of intoxication was overwhelming. [16-17]

COMPLAINTS received and sworn to in the Attleboro Division of the District Court Department on December 22, 1980.

The cases were tried before *Guy Volterra, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bernadette L. Sabra,* Assistant District Attorney (*Dana A. Curhan,* Assistant District Attorney, with her) for the Commonwealth.

*Hugh Samson* for the defendant.

LYNCH, J. The defendant, James A. Bryer, was tried and convicted of operating a motor vehicle while under the influence of intoxicating liquor and of operating a motor vehicle negligently so that the lives and safety of the public might be endangered. G. L. c. 90, § 24 (1) (a), (2) (a). He appealed and we took the case on our own motion.[1] We consider whether (1) the defendant was deprived of a fair trial by the prosecutor's references to the defendant's failure to call a witness; (2) the judge erred in denying the defendant's request for a continuance to procure a witness; and (3) whether the judge's instructions to the jury on the standards governing the charge of operating under the influence created a substantial risk of a miscarriage of justice. We affirm.

On December 20, 1980, Officer Gary Flood of the North Attleborough police department stopped a dark-colored Oldsmobile automobile which was being operated by the defendant and which had been speeding and swaying across the road.[2] The officer observed that the defendant had trouble with his balance as he stepped from the automobile; he was belligerent; there was a strong odor of alcohol on his breath; his eyes were red and glassy; and the officer concluded that the defendant

---

[1] This case is a consolidated case which includes two appeals from separate orders entered by a single justice of the Appeals Court. The defendant failed to brief those cases in a timely fashion below and waived those arguments before we took the consolidated case on our own motion. The defendant filed a motion in this court, pro se, seeking a stay for the purpose of raising issues in the consolidated cases. We have taken that motion under advisement and it is denied.

[2] Officer Flood did testify that there were patches of ice on the road that night.

was under the influence of alcohol. With assistance from another officer, the defendant was taken to the police station. The assisting officer and an officer at the police station corroborated the conclusion that the defendant was under the influence of alcohol.

The sole issue at trial was whether the defendant was under the influence of alcohol.[3] The defendant testified that he is six feet tall and that he weighed about 215 to 220 pounds at the time of the arrest. He testified that between 9 P.M. and midnight on December 19, 1980, he was at his apartment in East Providence, Rhode Island. He stated that while at home he had two drinks — each a Scotch whisky on the rocks. His roommate, Michael Stevens, who did not testify, was with him, according to the defendant's testimony, for about half an hour in that period. Around midnight, the defendant left for a bar in Taunton. He stated that he ordered one drink at that bar — another Scotch on the rocks — but only drank half of it. Stevens was at the bar, but they spent less than ten minutes together. About 12:30 A.M., the defendant left to go to his office and was stopped on the way.

1. *The prosecutor's remarks on the failure to call a witness.* During cross-examination of the defendant, the prosecutor asked several questions regarding the defendant's roommate, Michael Stevens. Although the prosecutor asked two questions regarding Stevens' failure to appear as a witness which were successfully objected to, the judge ultimately allowed the prosecutor to establish that the defendant never asked Stevens to testify. There was no error in allowing the prosecutor to pursue this line of inquiry.

Contrary to the defendant's assertion in his brief, the Commonwealth presented a strong case against the defendant on the sole issue of his sobriety. Three officers testified that the defendant was intoxicated and documented the various facts upon which they relied to reach this conclusion. A review of the record shows that the testimony was credible, and jointly

---

[3] The parties stipulated that the defendant was operating a motor vehicle on a public way.

corroborative in both conclusion and detail. The defendant chose to take the stand and his defense consisted of the assertion that he had only two and and one-half Scotches over a three and one-half-hour period. The jury were to infer that a six-foot man of substantially over two hundred pounds could hold this amount of liquor. The defendant pitted his credibility against the credibility of the officers.

The defendant had the right not to take the stand in his defense and "to remain passive, and to insist that the Commonwealth prove its case beyond a reasonable doubt without explanation or denial by him." *Commonwealth* v. *Madeiros,* 255 Mass. 304, 307 (1926). See *Commonwealth* v. *Powers,* 9 Mass. App. Ct. 771, 774 (1980). In taking the stand, however, the defendant opened the issue of his credibility and was subject to scrutiny on that ground. We are sensitive to references to a defendant's failure to adduce evidence on his behalf because of the necessity to avoid shifting the burden of proof to the defendant. See *Commonwealth* v. *Perkins,* 6 Mass. App. Ct. 964, 965 (1979). However, we recognize that "where incriminating evidence has been introduced by the Commonwealth and explanations consistent with his innocence could be produced by the defendant through witnesses other than himself, his failure in this respect may be deemed by the judge to be a fair matter for comment." *Commonwealth* v. *Franklin,* 366 Mass. 284, 293-294 (1974). See *Commonwealth* v. *Cobb,* 397 Mass. 105, 108-109 (1986); *Commonwealth* v. *Niziolek,* 380 Mass. 513, 519 (1980). We have required that the strength of the case against the defendant should be considered and reference to or instruction regarding the failure to produce witnesses should not be allowed "unless the evidence against him is so strong that, if innocent, he would be expected to call them." *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889). See *Commonwealth* v. *Niziolek, supra* at 519-520. Jurors are free, in such circumstances, to infer that an absent witness would have testified unfavorably. *Commonwealth* v. *Franklin, supra* at 294.

The defendant contends that *Commonwealth* v. *Franklin* permits prosecutorial comment only where the missing witness

is one "who could clarify or support [the defendant's] version of the facts." *Id*. at 292. The defendant notes that the prosecutor elicited the fact that Stevens was with the defendant for only half an hour at the defendant's home and for only ten minutes at the bar. From this the defendant argues that the issue at trial was how much the defendant drank over the three and one-half hour period prior to arrest and that Stevens had no knowledge as to that total period. This, however, is not a case where the witness could have said nothing corroborative of the defendant's story. Stevens presumably could have corroborated the defendant's testimony regarding the time they spent together that evening, could have testified as to his perceptions of the defendant's state of intoxication at the bar, and could have testified as to any other facts which would have been consistent with the defendant's testimony regarding his consumption of alcohol at home. The fact that Stevens could not have *fully* corroborated the defendant's story if it were true does not bar prosecutorial comment or inquiry on these lines, since the defendant would be expected to call for even partial corroboration of his story in a battle over credibility in the face of the Commonwealth's strong case. We find no error in the judge's rulings, or in the prosecutor's comment. We note that the defendant does not argue that Stevens was equally available to the prosecution. Even where that argument has been made we have permitted an inference to be drawn against the defendant where the posture of the case is such that the defendant would be naturally expected to call the witness. *Commonwealth v. Niziolek, supra* at 519; *Commonwealth* v. *Franklin, supra* at 293.

2. *The out-of-State witness*. The defendant argues that the judge abused his discretion in refusing to grant a continuance to allow a proper summons to issue to Dr. Bryan Quinn, a prospective defense witness. We find no abuse of discretion.

It is not relevant, for the purposes of this case, whether the proper procedure for summoning the out-of-State witness, Dr. Quinn, was followed because what is at issue is whether the judge abused his discretion in denying the continuance on June 5, 1981, in the face of the fact that the witness was not present.

There was ample justification for the denial of the continuance on the day of trial, even assuming that failure to summon the witness properly was no fault of the defendant.

The procedural history reveals that trial was delayed several times prior to June 5, 1981. After trial counsel was appointed on January 16, 1981, the case was continued for conference on January 29, 1981. The defendant defaulted on that day and a warrant issued. He arrived later in the day and the default was removed and the warrant dismissed. A conference was scheduled for February 6, 1981. The case was scheduled for trial on March 16, 1981, but was put over until April 28, 1981, at the defendant's request. Once again, the defendant defaulted on April 28, 1981, and a warrant issued. The defendant appeared later in the day — the default was removed and the warrant dismissed. Trial was rescheduled for June 4, 1981, but was held over for June 5, 1981. On June 1, 1981, the defendant had filed a motion to summon a witness under Mass. R. Crim. P. 17 (b), 378 Mass. 886 (1979), which was allowed. The motion was not accompanied by any affidavits and contained only the bare assertion that "the presence of said witness is necessary to an adequate defense." At a hearing on motions before trial on June 5, 1981, the defendant's attorney represented that Dr. Quinn would come in as an expert witness and "would testify that he was treating the defendant for back problems and the other problems that he had which would affect his ability to walk."[4]

On appeal, the defendant suggests that he was prejudiced at trial by the lack of the expert testimony. The defendant testified that he had a pinched nerve in his back which kept him in pain at all times during the incident. The defendant argues that the circumstantial evidence of intoxication could have been rebutted — by explaining his unsteadiness on his feet, the appearance of his eyes, and his belligerent attitude — and that his story could have been corroborated by the expert testimony.

---

[4] The transcript of these proceedings contains multiple gaps due to the inaudibility of those portions of the tape.

The standard of review of the judge's denial of the motion for continuance is clear: "a motion for continuance . . . lies within the sound discretion of the judge, whose action will not be disturbed unless there is a patent abuse of that discretion, which is to be determined in the circumstances of each case." *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972). We will not disturb a decision to deny a continuance unless it is shown to be arbitrary. *Commonwealth* v. *Gilchrest,* 364 Mass. 272, 274 (1973). *Commonwealth* v. *Smith,* 353 Mass. 442, 445 (1968).

As we stated in *Commonwealth* v. *Gilchrest, supra* at 276-277, "a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy."

In denying the request for a continuance in this case the judge could have considered that a relatively simple case had been pending for some time and that the defendant had caused multiple delays of the trial. *Commonwealth* v. *Smith, supra* at 445-446. *Commonwealth* v. *Scott,* 19 Mass. App. Ct. 983, 985 (1985). Moreover, the defendant has not established a need for the testimony of Dr. Quinn such that we would be required to find a patent abuse of discretion. The judge was presented only with the bare allegation of necessity and a general representation and description of the testmony to be offered. On appeal the defendant argues in more detail what the witness might have testified to, but even if these representations had been before the judge, the judge would have been within his discretion in denying the continuance in light of *Commonwealth* v. *Gilchrest, supra.* In that case, we found no abuse of discretion when a judge refused to continue a trial to allow expert testimony regarding the effects of Librium in a situation where the "expert testimony would not have been based on a physician's observations of the defendants themselves when under the influence of Librium." *Id.* at 277. Al-

though Dr. Quinn had treated the defendant for back problems, he had no testimony to offer regarding personal observations of the defendant at the time of the incident. At most, the witness could only have speculated as to the defendant's condition at the time of the incident. What was at issue at trial was not whether the defendant had a back problem, but whether or not the various indicia of intoxication were attributable to a back problem.[5] The judge properly could have considered that the jurors could assess, through their own common knowledge, the effects of a back problem. See *id.* at 276-277 & n.2. Expert testimony would not have measurably contributed to their ability to resolve this issue. In light of the multiple delays caused by the defendant and the failure to demonstrate the need for "any significantly new evidence," *id* at 277, the judge did not abuse his discretion in denying the continuance.

3. *Objection to the charge.* The judge instructed the jury that being under the influence means that the defendant, at the time of the incident, "was influenced in some perceptible degree." The instruction was consistent with Instruction 5.10 of the Model Jury Instructions for Criminal Offenses Tried in the District Court Department (1980), and was not objected to by the defendant. However, subsequently, in *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985), we reversed a conviction for operating under the influence finding error in a charge not substantially different from the one given in this case. We held that "in a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely. The Commonwealth need not prove that the defendant *actually drove* in an unsafe or erratic manner, but it must prove a diminished *capacity* to operate safely (emphasis in original)." *Id.* at 173. Since no objection was taken, we must discover whether there was a substantial risk of a miscarriage of justice in the judge's failure to charge the jury

---

[5] No evidence was introduced that the defendant did not have a back problem, and the prosecutor did not argue that he did not have a back problem.

in accordance with the standards enunciated in *Commonwealth* v. *Connolly, supra. Commonwealth* v. *Barrows,* 391 Mass. 781, 783-784 (1984). *Commonwealth* v. *Coleman,* 390 Mass. 797, 801-802 (1984). We find none.

The jury did find the defendant guilty of operating to endanger. The jury therefore found that the defendant operated a motor vehicle negligently, so that the lives and safety of the public were endangered. The jury necessarily determined that the defendant actually drove in an unsafe manner. That does not end the matter, however, since it was open for the jury to believe that the defendant was only under the influence to some perceptible degree — which is not sufficient — and that the negligent operation of the vehicle was not in any way related to alcohol, but was just negligent or careless. However, the possibility that the jury delivered their verdicts on this theory is so remote in light of the evidence presented at trial that the risk of a miscarriage of justice was minimal. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

First, once the jury resolved the credibility issue in the Commonwealth's favor, the case for intoxication was substantial and overwhelming.

Second, while it was theoretically open for the jury to believe that the defendant's erratic and unsafe driving was due entirely to factors other than intoxication, it is highly likely that the jury chose to infer his state of intoxication from his conduct and appearance but not from his driving. The risk, in this case, that the jury believed that the defendant's state of intoxication had no effect on his ability to drive when they specifically found that he was driving negligently, is not substantial. Therefore, reversal on the ground of an erroneous charge is not warranted.

*Judgments affirmed.*