## COMMONWEALTH *vs.* DONALD E. CRAWFORD.

No. 97-P-0506.

Suffolk. October 5, 1998. - March 8, 1999.

Present: ARMSTRONG, GILLERMAN, & KASS, JJ.

*Controlled Substances. Witness,* Unavailability. *Evidence,* Failure to produce witness, State of mind. *Practice, Criminal,* Instructions to jury, Comment by prosecutor.

At a criminal trial, there was not, as a matter of law, a sufficient foundation in the evidence to justify the prosecutor's argument that a certain person was a witness whom the defendant should have called, or to support the judge's giving a "missing witness" instruction: a new trial was required. [428-430]

At the retrial of a criminal case, evidence of the defendant's state of mind would properly be admissible. [430]

COMPLAINT received and sworn to in the Boston Municipal Court Department on August 21, 1996.

The case was tried before *Sally A. Kelly,* J.

*James R. Knudsen* for the defendant.

*Jane L. McDonough,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The defendant was convicted by a Boston Municipal Court jury of possession of cocaine with the intent to distribute, G. L. c. 94C, § 32A, and possession of marijuana, G. L. c. 94C, § 34. On appeal, he challenges his conviction on the cocaine distribution charge by arguing that the trial judge erred by excluding evidence relating to the defendant's state of mind and by giving a "missing witness" instruction.

We summarize the trial testimony. On the evening of August 20, 1996, Boston police Sergeant Detective Kevin Buckley was on undercover patrol near the Boston Common on the lookout for illegal drug activity. At some point he approached a man, later identified as Adrian Thompson, and attempted to purchase a twenty dollar package of cocaine. After a brief conversation,

Thompson agreed to supply Buckley with the drugs and told Buckley that he had to "get the drugs."

As Buckley watched, Thompson walked down the street and approached the defendant, who was standing nearby, apparently walking his dog. The two men talked briefly and then looked over at Buckley. Shortly thereafter, the defendant moved his hand toward Thompson's hand. From a distance of thirty yards, Buckley could not say whether anything had been transferred but, based on his training and experience, Buckley testified that what he had observed was consistent with "a passing of drugs." Thompson then walked back toward Buckley.

Thompson produced a glassine bag containing rock cocaine. Buckley handed him a marked twenty dollar bill and took the drugs. Thompson then walked back to where the defendant was standing.

Buckley left the area and radioed a description of Thompson and the defendant. Approximately ten minutes later the two men were arrested. The marked twenty dollar bill was found in one of the defendant's pockets. In addition, a small bag of marijuana was seized from the defendant. The defendant was not found to be in possession of any cocaine.

The defendant testified that he was walking his dog when he encountered Thompson, a man he had known for a long time. The defendant asked Thompson to lend him some money, but Thompson said he did not have any money at the time.

Defense counsel then asked the defendant, "What happened after that?" The defendant responded, "I said okay. He says well if you're going to be around later, I can give it to you then. But right now . . . ." At that point, the prosecutor objected to the testimony and moved to strike. The judge sustained the objection, and she struck Thompson's statement which she summarized as, "I can't give it to you now, if you're going to be around later, I can give it to you then."

Without objecting to the judge's ruling, defendant's counsel continued with the questioning. The defendant testified that he remained in the area, playing with his dog. Presently, according to the defendant, an officer rode up on a bicycle and asked everyone to leave the area, and the defendant walked away. Soon, he saw Thompson again; he was walking toward the defendant. At this point the judge, sua sponte, directed the defendant "not to testify to anything that this other person told you." Again, the defendant's counsel, without objecting to the

judge's ruling, proceeded with his questions, instructing his client to describe what happened next "without saying anything that Mr. Thompson said to you. . . ." The defendant testified that there was more conversation and that Thompson handed him a twenty dollar bill.

Defendant's counsel then asked the defendant, "[W]as it your intention to keep the twenty-dollar bill?" The defendant answered, "No, my intention was to change it, and . . . ." The prosecutor objected; the judge sustained the objection and struck the answer. The revised question was pressed, and the judge called for a sidebar conference. The defendant insisted that he could testify to his own state of mind. There was an extended colloquy, and finally agreement was reached that the defendant could be asked if he knew where Thompson got the money he gave to the defendant. Counsel did so; the defendant testified he did not know.

*Discussion.* The dispositive question in this appeal is whether Thompson might be regarded as the defendant's "missing witness" so as to justify an unfavorable comment by the prosecutor in her summation, coupled with a "missing witness" instruction from the judge.

The classic statement on this subject, which we set out in the margin, appears in *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134 (1986).[1] See *Commonwealth* v. *Figueroa,* 413 Mass. 193, 199 (1992); *Commonwealth* v. *Lo,* 428 Mass. 45, 50 n.8 (1998). At page 135 of *Schatvet* we added a distinguishing point of particular importance: "Circumspection in this matter is especially called for where the inference would run against a defendant in a criminal prosecution, for the inference may come uncomfortably close to invading constitutional rights." We

---

[1] "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party. . . . Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited *only in clear cases, and with caution.*" (Emphasis added.) See *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889) (The missing witness "principle . . . should be applied cautiously, and with a strict regard for the rights of persons accused").

referred to the privilege against self-incrimination, the right to decline to testify without unfavorable inference, and the Commonwealth's burden to prove guilt beyond a reasonable doubt. *Id.* at 135 n.10.[2]

Some of the reasons for caution[3] were described in *Commonwealth* v. *Franklin*, 366 Mass. 284 (1974). "An inference which is unfairly urged or drawn may be decisive in the case. The failure to produce a witness may not necessarily be inconsistent with innocence of the defendant. A witness may be withheld because of his prior criminal record, or because he is susceptible to cross-examination on collateral issues, or for other tactical reasons. For the same reasons it may be tactically unwise for the defendant to offer explanation to the jury of the reasons for his failure to produce the witness. . . . All of these considerations may assume added importance where the comment of the prosecutor in argument is followed by a charge by the judge which permits the inference . . . ." *Id.* at 294-295.

Adherence to these precautions is reflected in the frequency of cases in which the "missing witnesses" are persons who are quite close to the defendant, easily satisfying the familiar, and critical, availability requirement.[4] See, e.g., *Commonwealth* v. *Finnerty*, 148 Mass. 162 (1889) (children and tenants of the defendant); *Commonwealth* v. *Spencer*, 212 Mass. 438, 452-453 (1912) (defendant's wife); *Commonwealth* v. *Bryer*, 398 Mass. 9 (1986) (defendant's roommate); *Commonwealth* v. *Olszewski*, 416 Mass. 707, 723 (1993), cert. denied, 513 U.S. 835 (1994) (sister and father of the defendant); *Commonwealth* v. *Happnie*,

---

[2]For a much earlier case severely circumscribing the witnesses subject to the rule of production, see *Commonwealth* v. *Spencer*, 212 Mass. 438, 452 (1912). The court, after noting that the availability of a witness turns on whether the witness is "peculiarly under the influence of the defendant or peculiarly related in interest to him," *id.* at 451, held that the defendant's failure to call his wife as a witness — the "privilege" being hers, not the defendant's — where she was *in the courtroom* during the trial justified the prosecutor's unfavorable remarks in his summation.

[3]The need for caution where the inference would run against the defendant has been emphasized frequently. See *Commonwealth* v. *Cobb*, 397 Mass. 105, 108-109 (1986); *Commonwealth* v. *Zagranski*, 408 Mass. 278, 287 (1990); *Commonwealth* v. *Olszewski*, 416 Mass. 707, 723 n.17 (1993), cert. denied, 513 U.S. 835 (1994).

[4]What is meant by availability is "the likelihood that the party against whom the inference is to be drawn would be able to procure the missing witness' physical presence in court." *Commonwealth* v. *Happnie*, 3 Mass. App. Ct. 193, 197 (1975).

3 Mass. App. Ct. 193 (1975) (wife of the defendant); *Commonwealth* v. *Caldwell*, 36 Mass. App. Ct. 570, 581-582, *S.C.*, 418 Mass. 777 (1994) (cousin of the defendant).

Against this background, we turn to the relevant events in this case. On cross-examination, the prosecutor elicited from the defendant that the defendant had known Thompson a long time, that Thompson was a good friend of the defendant's family whom the family had known for a long time, that Thompson did not live near the defendant, that the defendant and Thompson did not get together from time to time, and the defendant does not see Thompson, and that the meeting with Thompson on the evening in question was happenstance. Following the defendant's testimony that Thompson did not live near him, the prosecutor asked, "Oh you don't know where he [Thompson] lives?" The defendant answered, "Not exactly."[5] The prosecutor left it at that.

At the charge conference, the judge engaged in a detailed conversation with counsel. Counsel for the defendant argued that the defendant testified that "he hadn't seen Mr. Thompson lately and he didn't know where he is now," and that Thompson "was involved in a drug deal and . . . therefore is not available to this defendant." Thompson, counsel argued, was the foundation of the government's case against the defendant, and giving the instruction against the defendant, but not against the Commonwealth, would deprive the defendant of a fair trial. The defendant objected "strenuously" to the proposed instruction favoring the Commonwealth. The prosecutor responded, "It's only because the defendant took the stand and told this story that the big question arises, why isn't Adrian Thompson here?"

The judge, citing *Commonwealth* v. *Bryer*, 398 Mass. 9, 12 (1986),[6] concluded that, because the defendant testified and had told a story the key to which was Adrian Thompson and because Thompson was well known to the defendant and his family, "[i]t's fair game to the Commonwealth to argue about that." The judge saved the defendant's rights.

---

[5]The answer, "Not exactly," does not appear in the transcript; it was provided by the stipulation of counsel following the trial.

[6]The judge presumably had in mind the statement in *Bryer* that "[i]n taking the stand . . . the defendant opened the issue of his credibility and was subject to scrutiny on that ground." *Bryer,* 398 Mass. at 12. In *Bryer*, however, the "missing witness" was the defendant's roommate, so the issue of availability — the central issue in this appeal — was not a live issue in *Bryer*.

In her summation, the prosecutor asked the jury to consider the question, "[W]here is Adrian Thompson?", following which the judge charged the jury and included a missing witness instruction.[7]

We decide the question of the sufficiency of the foundation for this instruction — just as the judge was required to do, and implicitly did do — as matter of law. *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 135. *Commonwealth* v. *Sena*, 29 Mass. App. Ct. 463, 467 (1990). *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 81 (1993). "[I]f the circumstances [in the case,] considered by ordinary logic and experience, suggest a plausible reason for nonproduction of the witness, the jury should not be advised of the inference. . . ." *Commonwealth* v. *Lo*, 428 Mass. at 51, quoting from *Commonwealth* v. *Anderson*, 411 Mass. 279, 282-283 (1991). 2 Wigmore, Evidence § 290, at 216 (Chadbourn rev. ed. 1976).[8]

Regarding the availability of Thompson to the defendant — the question that is basic to any inquiry involving the inference, see *Commonwealth* v. *Franklin*, 366 Mass. at 293 — the starting point, as we said recently in *Commonwealth* v. *Luna*, 46 Mass. App. Ct. 90 (1998), is the "prosecution's undertaking to show that it was likely such a person . . . would be available to the defendant if the defendant pursued him or her in good faith and with due diligence." *Id.* at 95. Here, the prosecution undertook its task by cross-examination of the defendant. The prosecutor succeeded in establishing that Adrian Thompson was a long-time friend of the family, that the defendant did not see Thompson with any regularity, and that he did not know "exactly" where Thompson lived. Such was the showing made by the Commonwealth that it offers in support of the prosecutor's comment to the jury and the judge's instruction regarding the available unfavorable inference because of the nonproduction of Thompson.

The prosecution, however, had previously established, during the direct examination of Buckley, that Thompson had been arrested at the same time the defendant was arrested. The record

---

[7]The defendant does not contest the content of the instruction but, rather, he contends that the foundation for giving it was inadequate. See, e.g., *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 80 n.6 (1993).

[8]If the foundation for a missing witness instruction is sufficient, the instruction may or may not be given in the sound discretion of the judge. *Commonwealth* v. *Lo*, 428 Mass. at 51.

is silent as to the outcome of the arrest, and whether Thompson remained in the custody of the Commonwealth; this material information was in the possession of the Commonwealth. Since the record establishes only that Thompson was arrested, it was more likely than not that he remained in the control of the Commonwealth or that Thompson was available to the Commonwealth. If the defendant was *not* innocent, as the Commonwealth claims, Thompson's inculpatory testimony[9] would rebut the only defense that the defendant had — that his transaction with Thompson was a loan, not a drug deal. Thus it may have been more appropriate for the missing witness instruction to have been given against the Commonwealth, or, failing that, that no instruction be given. See *Commonwealth* v. *Lo*, 428 Mass. at 51.

Furthermore, during the colloquy with the judge, the defendant's counsel emphasized that Thompson was the person who was involved in selling drugs to Buckley. While the argument might have been made with greater particularity, counsel was directing the judge's attention to the likelihood that Thompson had a criminal record, making him singularly vulnerable on cross-examination. If Thompson's appearance had been compelled, there was the real possibility that (if not yet tried, convicted, and sentenced) he would refuse to testify on the basis of the Fifth Amendment to the United States Constitution, or that he would use the occasion to plea bargain with the prosecutor in return for testimony *against* the defendant.[10] It is entirely plausible, then, to assume that the defendant was innocent, and yet for rational, tactical reasons, he chose not to seek the appearance of Thompson.

The mere fact that the defendant testified does not in any respect diminish the plausibility, on this record, of his reasoned explanation for the nonproduction of Thompson, nor does it increase the likelihood that the nonappearance of Thompson was because the defendant "wilfully attempted to withhold or conceal significant evidence . . . ." See *Commonwealth* v. *Lo*, *supra* at 51, quoting from *Commonwealth* v. *Anderson*, 411 Mass. 279, 282 (1991). This is not a "clear case[]," *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134, contrast *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76 (1993), and the

---

[9]As noted in the text, *supra*, Thompson exchanged rock cocaine for a marked twenty dollar bill from Sergeant Buckley.

[10]Contrast *Commonwealth* v. *Johnson*, 39 Mass. App. Ct. 410, 412 (1995).

Commonwealth's attempt to justify the judge's instruction was inadequate as matter of law. Contrast *Commonwealth* v. *Thomas*, 429 Mass. 146 (1999) (where, in his opening statement, defendant's counsel told the jury that they would hear a named witness testify that the defendant was at home at the time of the murder, but the defendant failed to call that person as a witness, and where the named person was present at or outside the court house on at least two days of the trial, and where the absence of the named person was not explained by any other circumstance, held, that missing witness instruction given by the judge was not error).

Because one of the argued evidentiary issues may arise on retrial, we address it briefly here. The defendant contends that the judge erroneously sustained the prosecutor's motion to strike the defendant's testimony that Thompson said he could give the defendant the loan if the defendant would be around later on. This is so, argues the defendant, because Thompson's statement provided the reason for the defendant to wait for Thompson and to speak to him again. The evidence should have been admitted because it was obvious that its purpose was to show the defendant's state of mind. See McCormick, Evidence § 249, at 103 (4th ed. 1992) (out-of-court statements "will frequently have an impermissible hearsay aspect as well as the permissible nonhearsay aspect"); 6 Wigmore, Evidence § 1789, at 314 (Chadbourn rev. ed. 1976) ("Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned" [emphases original]). On any retrial, in the event that the basis for the admissibility of this evidence is not clear to the trial judge, it will be incumbent on defendant's counsel to articulate the reason for its admission; this was not done here.

Because it was prejudicial error to permit the prosecutor's comments and to give the missing witness instruction, see, e.g., *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 136, and cases cited, the judgment on the cocaine distribution charge must be reversed, and the verdict on that count must be set aside. The judgment on the charge of possession of marijuana is affirmed.

*So ordered.*