## Commonwealth *vs.* Jose Delacruz.

Suffolk. May 10, 2012. - October 11, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Homicide. Constitutional Law,* Assistance of counsel, Waiver of constitutional
rights, Voluntariness of statement. *Due Process of Law,* Assistance of
counsel. *Practice, Criminal,* Assistance of counsel, Admissions and confes-
sions, Motion to suppress, Waiver, Voluntariness of statement, Arraign-
ment, Instructions to jury, Capital case. *Evidence,* Admissions and confes-
sions, Voluntariness of statement. *Waiver.*

A Superior Court judge did not abuse his discretion in denying a criminal
defendant's unwritten request for a continuance so that he could change
counsel, where proposed successor counsel was not prepared to defend the
defendant at the time of the request or by the set trial date (which had been
moved five times already), while the defendant's appointed counsel was; and
where no mention was made at any time that appointed counsel was insuf-
ficient in any way or that a problem, as opposed to a mere change of mind,
constituted the defendant's reason to seek a change in counsel. [509-511]

At a murder trial, the judge did not abuse his discretion in declining to allow
the defendant to discharge his appointed counsel, given that counsel was
ready for trial, that the defendant failed to articulate anything other than a
general dissatisfaction regarding the defense being used, and that the
defendant did not indicate that successor counsel was then available or
prepared to try the case. [511]

A Superior Court judge properly concluded, in denying a criminal defendant's
pretrial motion to suppress his statement to the police, that the defendant
made the statement voluntarily and after a voluntary, knowing, and intel-
ligent waiver of Miranda rights, in that the judge fully took into account
the defendant's limited intellectual function as it bore on his ability to
waive his rights and otherwise make a voluntary statement. [514-516]

This court concluded that suppression of a criminal defendant's statement to
police, made after his out-of-State arrest, was not warranted on the ground
of unreasonable delay in arraignment, where the circumstances of the inter-
rogation, in which the defendant's statements were elicited only after he
executed an informed and voluntary written waiver of his right to be ar-
raigned without unreasonable delay, did not violate the spirit of the so-
called "safe harbor" rule. [516-517]

At a murder trial, the judge did not err in reinstructing the jury, in response to
questions asked by them during deliberations, on the elements required for
murder committed by deliberate premeditation and with extreme atrocity
or cruelty, and in repeating certain definitions he had given earlier in his
main charge concerning those subjects, but in not reinstructing on the

relevance of the defendant's mental impairment to those elements, where the judge adequately instructed the jury in his main charge on the relevance of such impairment as it bore on those elements, and where the jury did not request clarification or reinstruction on that point. [517-518]

INDICTMENTS found and returned in the Superior Court Department on May 8, 2007.

Pretrial motions to suppress evidence were heard by *Charles J. Hely*, J., and the cases were tried before *Charles T. Spurlock*, J.

*Charles K. Stephenson* for the defendant.

*Kris C. Foster*, Assistant District Attorney (*Amy J. Galatis*, Assistant District Attorney, with her) for the Commonwealth.

IRELAND, C.J. On May 19, 2009, a jury convicted the defendant, Jose Delacruz, of murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty, and of possession of a firearm without a license, in violation of G. L. c. 269, § 10 (*a*). Represented by new counsel on appeal, the defendant argues (1) that he was deprived of his counsel of choice resulting in a violation of the Sixth Amendment to the United States Constitution; (2) error in the denial of his motions to suppress statements; and (3) error in the judge's instructions to the jury. In addition, the defendant asserts that we should exercise our power pursuant to G. L. c. 278, § 33E, to reduce the murder verdict to a lesser degree of guilt or to grant him a new trial. We reject the defendant's claims, affirm the order denying the defendant's motions to suppress, and affirm the judgments of conviction. We discern no basis to exercise our authority pursuant to G. L. c. 278, § 33E.

1. *Background.* The jury could have found the following facts. During the early morning hours of February 8, 2007, the defendant walked into a convenience store located in the Grove Hall neighborhood of the Roxbury section of Boston, stayed briefly, and left. A short time later, the defendant returned to the store, entered it, drew a firearm, and shot repeatedly at the victim, Tyrice Brown, who was sitting on an icebox inside the store.[1] The victim fell to the floor and said, "Help me." An employee telephoned 911 and then attempted to comfort the

---

[1] The victim and his cousin had been at the store for a couple of hours, flirting with an employee who worked there.

victim. The victim was breathing heavily and holding his chest, his eyes were open, and he was shivering. A few minutes later, an ambulance and police arrived. Police removed a projectile protruding from the victim's stomach area. The victim was transported to a nearby hospital where he died within hours.

The victim suffered numerous injuries from four separate gunshot wounds. He died as a result of gunshot wounds to his torso with perforations to his lung, liver, intestines, and external iliac artery (a major blood vessel). The medical examiner who performed the autopsy gave his opinion that, although the victim would have died shortly after sustaining his injuries, he would have experienced "significant" pain and would have had difficulty breathing. The medical examiner recovered two spent projectiles and two bullet fragments during the autopsy.[2]

Witnesses at the convenience store could not identify the shooter, but surveillance cameras inside the store recorded the shooting in its entirety. Sergeant Detective Kevin J. Buckley of the Boston police department's homicide unit, who was in charge of the investigation, showed the recording to various individuals, including one patrol officer who immediately recognized the shooter as the defendant. The officer had known the defendant for approximately ten years, had grown up in a neighborhood near the defendant's, and knew the defendant and some of his family from attending the same church.

An arrest warrant was obtained, and the defendant eventually was apprehended and arrested in Wilmington, Delaware, on March 27, 2007. After being given Miranda warnings and waiving those rights, as well as his right to a prompt arraignment, the details of which are set forth later in this opinion relative to the defendant's motions to suppress, the defendant agreed to speak with detectives from Boston who arrived in the late evening on the day of the defendant's arrest. Once the defendant was shown a photograph from the surveillance video recording of the shooting, he admitted that he had shot the victim in

---

[2]It was later determined, after an analysis was conducted by a detective in the Boston police department's firearms analysis unit, that the two spent projectiles recovered at the autopsy, along with the projectile removed from the victim's stomach area by police, were fired from the same revolver-type firearm, which was not recovered.

retaliation for his having been shot in the hand by the victim in January, 2007.

The defendant did not testify at trial. His trial counsel elicited during the cross-examination of a detective that the defendant claimed that the person who allegedly had shot him in January had continued thereafter to taunt and threaten him. The defendant's trial counsel argued that, although the defendant had shot the victim, because the defendant is "cognitively limited," the shooting was "something less" than murder in the first degree. Defense counsel repeated this point during his closing argument, asserting that the defendant's mental limitations warranted a verdict of murder in the second degree. In support of this defense, at trial, the defendant offered the testimony of Dr. Charles Drebing, a clinical neuropsychologist. Dr. Drebing testified that he had performed a neuropsychological assessment of the defendant, during which the defendant revealed that he had experienced a "lifelong history of troubles in school and [in] work." The defendant also reported that he had been in special education classes while in school. Dr. Drebing testified that the results of various tests he had conducted confirmed that the defendant was in the "borderline mentally retarded" to low intelligence range. Dr. Drebing also noted that the defendant exhibited several symptoms of posttraumatic stress disorder, as well as depression. Dr. Drebing acknowledged during cross-examination that he had not been asked by defense counsel to render an opinion concerning whether the defendant was competent. Dr. Drebing did not provide any opinion concerning whether the defendant was legally responsible for his criminal conduct.

2. *Deprivation of counsel of choice.* The defendant argues that, by holding the parties to a November 18, 2008, order scheduling a trial date of May 12, 2009, both a pretrial judge and the trial judge committed "structural constitutional error" violating his right to counsel under the Sixth Amendment to the United States Constitution. Some background is in order.

The defendant was arraigned in May, 2007. Ten months later, on March 27, 2008, a joint motion of the parties was allowed to move the trial date to July 28, 2008. On July 17, 2008, the parties appeared in court and by agreement continued the trial date

to July 30, 2008. Two days before this scheduled trial date, the defendant's request to continue the trial date to August 26, 2008, was allowed. This action was taken simultaneously with the defendant's change of appointed counsel. The record reflects that, on August 26, 2008, the trial date was rescheduled to May 1, 2009,[3] and that the defendant waived his right to a speedy trial under Mass. R. Crim. P. 36 (b) (1) (C), 378 Mass. 910 (1979). On November 10, 2008, the Commonwealth moved to continue the trial date to May 12, 2009. This motion was allowed on November 18, 2008. Thus, by November 18, 2008, the defendant's trial date had been moved five times and without objection by the defendant.

On March 3, 2009, counsel for the parties appeared before a pretrial judge. The defendant was not present. Counsel had informed the clerk that they wanted to discuss the issue of a change of defense counsel, but that the issue could be explored only if the trial date were to be moved. The private attorney who sought to be appointed as counsel for the defendant indicated that he could be available the second week of July. An assistant district attorney suggested a November trial date, which the judge rejected because he "need[ed] to put some cases into July." The judge requested that the parties and the defendant soon return and stated that he would "tentatively" reschedule the trial date for July 13.[4]

On March 10, 2009, the parties appeared again before the same pretrial judge. The defendant was present. His appointed counsel was not present because of a family emergency, but had called and relayed that he stood ready for trial (for May 12). Potential private counsel for the defendant was present and stated that he was "prepared to enter an appearance" but with a "contingency," namely, he could not do so if the case were to be tried in May. He indicated that he had been contacted but not retained by the defendant's family in August or September of 2008, and that they had "recontacted" him "a couple of weeks ago" to "secure representation." Because of a trial the attorney

---

[3]There is no indication on the docket at whose request the trial date was continued.

[4]The transcript of the March 3, 2009, proceeding consists of four pages, including the title page.

had in late April, he stated that he could not represent the defendant unless the May 12 trial date was moved. The judge stated that he "appreciate[d]" the candor of the attorney and that the case "[was] going to go forward on May 12." The judge then inquired of the attorney regarding another possible case conflict in May, which the attorney acknowledged could occur. Neither the Commonwealth nor the defendant asked to be heard. The judge thanked counsel, and the clerk announced that the case remained on trial for May 12.[5,6] The record does not indicate why the focus of this hearing reverted back to the May 12, 2009, trial date instead of the previous "tentative" July date.

a. *Action of pretrial judge.* The defendant states that the pretrial judge who, on March 10, 2009, kept the May 12, 2009, trial date in place prevented him from "exercising his right to be represented by counsel of his choice." In essence, the defendant challenges the effective denial of a request for a continuance so that he could change counsel. "Whether a motion for continuance should be granted lies within the sound discretion of the judge, whose action will not be disturbed unless there is patent abuse of that discretion, which is to be determined in the circumstances of each case." *Commonwealth* v. *Pena*, 462 Mass. 183, 189 (2012), quoting *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517-518 (1972). A judge, however, may not exercise his discretion in such a way as to impair a defendant's "constitutional right to have counsel who has had reasonable opportunity to prepare a defense." *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995), quoting *Commonwealth* v. *Souza*, 397 Mass. 236, 240 (1986). "In determining whether a judge's denial of a continuance has violated a defendant's right to effective assistance of counsel and to due process of law, we must examine the 'circumstances present in [the] case, "particularly [those] reasons presented to the trial judge." ' " *Commonwealth* v.

---

[5]The defendant mischaracterizes the record and the status of the case, claiming that, at the March 10, 2009, hearing, the pretrial judge "decreed that the case was to be tried two months sooner, in May," when at that time, and since November 18, 2008, the trial date had been set as May 12, 2009. The May trial date came as no surprise to the defendant.

[6]The transcript of the March 10, 2009, proceeding consists of four pages, including the transcript title page.

*Miles, supra,* quoting *Ungar* v. *Sarafite,* 376 U.S. 575, 589 (1967).

Here, the pretrial judge did not expressly state his reasons for maintaining the set trial date.[7] The record, however, shows that his decision (which effectively served as a denial of an unwritten request for a continuance) was not an abuse of discretion. As an initial matter, the defendant's appointed counsel had not moved to withdraw and there was no actual written motion seeking either the appointment of new counsel or the continuance of the trial date. At best, all that previously had been before the judge (at the March 3, 2009, hearing) were tentative inquiries, including exploring whether the trial date was set or could be moved. The trial date, however, had been moved five times already, see *Commonwealth* v. *Bryer,* 398 Mass. 9, 15 (1986) (in denying request for continuance judge could consider, among other matters, that relatively simple case had been pending too long); *Barber* v. *Commonwealth,* 353 Mass. 236, 240 (1967) (protection of defendant's Sixth Amendment rights "cannot be considered without reference to the orderly transaction of judicial business"), and the proposed new counsel had just been contacted by the defendant's family and had two pressing cases (and at least one trial) requiring his imminent attention, see *id.* (Sixth Amendment is not "guaranty against all inconvenience to or pressures on counsel"). The proposed new counsel was not prepared to defend the defendant at that time or by the set trial date, and the defendant's appointed counsel was. Significantly, no mention was made at any time that appointed counsel was insufficient in any way or that a problem, as opposed to a mere possible change of mind, constituted the reason of the defendant to seek a change in counsel and, hence, a continuance. See *id.* at 240-241 (finding no abuse of discretion in denying postponement of trial date where petitioner could not show harm absent postponement). See also *Commonwealth* v. *Haley,* 413 Mass. 770, 774-775 (1992) (no abuse of discretion in denying motion to continue where counsel "did not indicate any specific area in

---

[7]The better practice would have been for the pretrial judge to have articulated his reasoning on the record. It appears that some discussion had occurred off the record before the March 10, 2009, hearing, because the focus of that short hearing was maintaining the trial date of May 12 and not inquiring of other tentative dates.

which he may have lacked adequate preparation"). In these circumstances, the defendant has failed to show an abuse of discretion by the judge.[8]

b. *Action by the trial judge.* The trial judge did not abuse his discretion in declining, on the first day of the trial before the jury were sworn, to allow the defendant to discharge his appointed counsel. See *Commonwealth* v. *Jackson*, 376 Mass. 790, 796 (1978). At trial, a defendant's "freedom to change counsel is significantly more restricted than it is before trial." *Id.* at 797. The defendant's appointed counsel was ready for trial, the defendant failed to articulate anything other than a general dissatisfaction regarding the defense being used (mental impairment), and the defendant did not indicate that his desired new counsel was then available or prepared to try the case. We add that the record does not, contrary to the defendant's contention, reflect that the judge exhibited a "jaundiced attitude" toward the case. Rather, the judge's comment that the shooting had been recorded on videotape served as part of his appraisal regarding the level of complexity of the case, a consideration that was appropriate to the exercise of his discretion. See, e.g., *Commonwealth* v. *Bryer, supra* (in ruling on request for continuance judge properly considered simplicity of case).

3. *Motions to suppress statements.* a. *Background and standard of review.* Prior to trial, the defendant filed two motions to suppress recorded statements he made to police claiming that

---

[8]The defendant contends that he was not afforded an opportunity to be heard at the March 10, 2009, hearing and should have been given a hearing at which a thorough inquiry would be made concerning his wish to change counsel. The record belies his first assertion. At the March 10, 2009, hearing, the defendant's appointed counsel had contacted the court to relay that he was ready for trial, and the defendant's proposed new counsel set out the defendant's position to the court. The defendant does not identify what further information he would have liked relayed to the judge. Concerning the defendant's argument that a thorough inquiry should have been conducted concerning the defendant's desire to change counsel, a thorough inquiry was not required because the defendant had not advanced a claim of inadequate representation by appointed counsel but, rather, merely appeared to be exploring the possible option of substituting counsel only if the trial date were to be moved. See *Commonwealth* v. *Moran*, 388 Mass. 655, 659-660 (1983), and cases cited (judge should inquire into defendant's reasons for wanting to discharge counsel, but no prejudice where defendant had no valid reason to discharge attorney).

they were obtained in violation of various State and Federal constitutional rights. Specifically, the defendant argued, as relevant here, that he had not voluntarily waived his Miranda rights or his right to a prompt arraignment pursuant to *Commonwealth* v. *Rosario*, 422 Mass. 48, 56 (1996) (*Rosario*). After conducting an evidentiary hearing, the motion judge denied the motions. The judge found beyond a reasonable doubt that the Miranda warnings and *Rosario* rights had been properly given to the defendant and that he had understood them. The judge further found, beyond a reasonable doubt, that the defendant had made a knowing, intelligent, and voluntary waiver of his Miranda rights, and an informed and voluntary written waiver of his *Rosario* rights. Last, the judge determined, beyond a reasonable doubt, that the defendant's statements had been voluntary.

In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'" *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). We summarize the judge's findings of fact, supplemented with uncontested testimony adduced at the evidentiary hearing. See *Commonwealth* v. *Garcia*, 443 Mass. 824, 828 (2005).

Based on evidence identifying the defendant as the shooter shown in the surveillance recordings, Boston police officers obtained a warrant for the defendant's arrest. After obtaining information that the defendant might be in Wilmington, Delaware, Boston police Officers Joseph King and Stephen Ridge traveled there. With the help of Federal and local officers, the officers were able to apprehend and arrest the defendant at approximately 11:20 A.M. on March, 27, 2007, in Wilmington. After placing the defendant in a police cruiser, Officer King read the defendant the Miranda warnings and showed him a printed set of warnings. Officer King asked the defendant whether he understood the warnings, and the defendant responded that he did.

In the police cruiser, the defendant inquired about the case and asked to speak with "Detective Jack." Officer King assumed that the defendant was referring to "Detective Jack Callahan" of the

Boston police department. Officer King told the defendant that he was arrested pursuant to a murder warrant from Boston, but declined to discuss the case any further. The defendant made no further statements until Boston police homicide detectives arrived about twelve hours later.

At approximately 10:55 P.M. on March 27, at the New Castle County police department in Delaware, the defendant was interviewed by Detective Jeremiah Benton and then-Detective Latisha Adams of the Boston police homicide unit. The defendant was not handcuffed or otherwise restrained. The defendant agreed to have the interview electronically recorded and signed a consent form to that effect.

The defendant stated that he was twenty-one years of age and that his highest level of completed education was the ninth grade. He stated that he had no problems reading and understanding English, but informed the officers that he stuttered. From a preprinted form, Detective Benton read each Miranda warning to the defendant and asked the defendant whether he understood. In response to each warning, the defendant answered "yes" or nodded affirmatively. The form also advised the defendant that he retained the right to stop answering at any time and to speak with a lawyer. The defendant initialed each Miranda warning and signed the bottom of the form indicating that he had read and understood the warnings and wished to make a statement without a lawyer being present.

Detective Benton next read to the defendant the Boston police department's *Rosario* waiver form. Detective Benton read each section to the defendant and after each section asked whether he understood. The defendant stated that he understood. Detective Benton then read the provision located at the bottom of the arraignment waiver form that provided: "I waive my right to prompt arraignment voluntarily and wish to speak with the police." The defendant stated, "I don't agree with that," and "I don't waive to go see the judge and see what's the evidence against me."[9] The detectives then discussed the defendant's concerns as to this language and its meaning. After clarifying

---

[9]The defendant initially was under the impression that by signing this form waiving his right to a prompt arraignment, he would waive his right to a preliminary hearing in the Delaware court in its entirety.

what the language meant and assuring the defendant that, contrary to his concern, the language would not result in a waiver of the his right to a preliminary hearing in a Delaware court, see note 9, *supra,* Detective Benton again asked the defendant whether he had questions about the language and whether he understood what he was signing. The defendant replied that he understood. The defendant agreed to speak with the officers and signed the *Rosario* waiver form.

After this exchange, the defendant told the detectives that he had been shot in January. The defendant claimed to have been in Delaware in February, but the detectives indicated that they had video surveillance footage of the defendant on February 8 in the convenience store where the victim had been shot. Once the detectives showed the defendant a photograph taken from the surveillance footage, the defendant began explaining what had happened and made incriminating statements. In summary, he stated that he fortuitously had come across the victim at the convenience store, recognized the victim as the person who had shot him in January, and went back inside the store to shoot him.

b. *Discussion.* On appeal, the defendant argues that the motion judge erred in concluding that the Commonwealth proved beyond a reasonable doubt that he had knowingly and intelligently waived his rights prior to providing a statement to police. Specifically, the defendant contends that the motion judge placed insufficient weight on his intellectual limitations and failed to account adequately for the confusion he exhibited during the questioning as to his right to a prompt arraignment. Additionally, the defendant argues that, although the safe harbor rule announced in *Rosario,* discussed *infra,* does not apply to out-of-State arrests, *Commonwealth* v. *Morganti,* 455 Mass. 388, 399 (2009), the principles underlying *Rosario* are implicated as they relate to the voluntariness of his statements. We address each argument in turn.

"Because the defendant was advised of, and waived, his *Miranda* rights, the issue becomes whether the Commonwealth has proved, by a totality of the circumstances, that the defendant made a voluntary, knowing, and intelligent waiver of his rights, and that his statements were otherwise voluntary." *Commonwealth* v. *LeBeau,* 451 Mass. 244, 254-255 (2008), and

cases cited. See *Commonwealth* v. *Medeiros*, 395 Mass. 336, 343 (1985) (although voluntariness of Miranda waiver and voluntariness of statement are distinct inquiries, each analysis involves totality of circumstances test). In making these determinations, courts examine factors such as "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency . . . and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Tolan*, 453 Mass. 634, 642 (2009), quoting *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986).

Contrary to the defendant's argument, the judge fully took into account his limited intellectual function as it bore on his ability to waive his rights and otherwise make a voluntary statement. In his decision, the judge expressly acknowledged the obligation to use "special care" while evaluating this claim. See *Commonwealth* v. *Cameron*, 385 Mass. 660, 664 (1982) (in reviewing validity of waiver of rights, court must "scrutinize the record with special care when the suspect has a diminished or subnormal mental capacity"). The judge explained that, despite the testimony from the defendant's expert, a clinical psychologist, regarding the limited intellectual functioning of the defendant, the "circumstances of the interview and the defendant's condition and state of mind" bore on his conclusion. Of significance to the judge were the following facts, which were supported by the evidence: it was the defendant who initiated the request to speak with a detective at the time of his arrest; the defendant was not handcuffed during the interview; the interview was "low-key and non-threatening"; the defendant was at ease with the detectives, a male and a female, throughout the interview; there was no coercive conduct, trickery, promises of leniency, or threats; the defendant was twenty-one years of age at the time of the interview; the defendant had prior experience in the criminal justice system; and the defendant's knowledge of Delaware law regarding his rights to a preliminary hearing[10] illustrated his ability to understand his rights and court proceedings. Although limited intelligence is a factor in examin-

---

[10] We have reviewed the video recording of the defendant's interview. The

ing the totality of the circumstances leading to a waiver, see *id.*, its mere existence is not outcome determinative whether a defendant is capable of making a knowing, intelligent, and voluntary waiver of his rights. See, e.g., *Commonwealth* v. *Jackson*, 432 Mass. 82, 86-87 (2000) (defendant with intelligence quotient of sixty-five capable of waiving Miranda rights). The same can be said with respect to the determination of voluntariness. The record demonstrates that the judge considered all of the defendant's arguments. We point out that it was not until the officers showed the defendant his photograph from the surveillance video that the defendant began speaking more candidly about the incident. See *id.* at 87, citing *Commonwealth* v. *Wallen*, 35 Mass. App. Ct. 915, 917 (1993) (defendant's efforts to exculpate himself support a finding of capacity to understand and waive Miranda rights). The judge properly concluded, beyond a reasonable doubt, that the defendant made his statement to police voluntarily and after a voluntary, knowing, and intelligent waiver of his Miranda rights.

The defendant maintains that his statements were involuntary because, although the safe harbor rule established in *Rosario, supra,* is generally inapplicable to out-of-State arrests, *Commonwealth* v. *Morganti*, 455 Mass. 388, 399 (2009), an extended delay in access to the courts "may disadvantage a suspect in the exercise of his rights." As a general matter, defendants have the right to a prompt arraignment, and "police have a duty to bring an arrested person before a court for arraignment as soon as reasonably possible to prevent unlawful detention 'and to eliminate the opportunity and incentive for application of improper police pressure.' " *Id.*, quoting *Rosario, supra* at 51. The safe harbor rule, however, also states that "[a]n otherwise admissible statement is not to be excluded on the ground of

only time the defendant appeared confused was when he expressed his belief that some of the language pertaining to the *Rosario* waiver form would result in a denial of a preliminary hearing in a Delaware court. Once the officers assured him that was not the case, the defendant no longer appeared confused and responded appropriately to the questions posed by the officers. The officers did not rush in giving their responses to the defendant and repeatedly asked him if he understood, expressly stating that they wanted to be sure that he did in fact understand. The defendant's contention that the judge erroneously "discounted" the defendant's "evident confusion" lacks support in the record.

unreasonable delay in arraignment, if the statement is made within six hours of the arrest (day or night), or if (at any time) the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay." *Rosario, supra* at 56. Contrary to the defendant's argument, the rule was created to guard against police attempting intentionally to delay an arraignment long enough to secure a confession from an unrepresented defendant, not to prevent delay accompanied by a valid waiver, as was obtained here, of the right to a prompt arraignment.

Although we have recently stated that the safe harbor rule "applies by its terms only to persons arrested in Massachusetts," *Commonwealth* v. *Morganti, supra,* we nevertheless may consider whether the circumstances of a particular interrogation "violated the spirit of the rule." *Id.* at 400. We conclude that they did not. The defendant's statements were elicited only after the defendant executed an informed and voluntary written waiver of his right to be arraigned without unreasonable delay.

4. *Jury instructions.* In his main charge to the jury, the judge instructed them to consider credible evidence of the defendant's mental impairment in determining whether the Commonwealth had proved beyond a reasonable doubt that the defendant deliberately premeditated and acted in a cruel or atrocious manner. During deliberations, the jury requested that the judge provide them with the definitions of murder in the first and second degrees and "specifically the definition of premeditation." They also asked, the following day, for the judge to "[e]xplain extreme atrocity [or] cruelty." In response to these questions, the judge reinstructed the jury on the elements required for murder committed by deliberate premeditation and with extreme atrocity or cruelty, and repeated the definitions he earlier had given in his main charge concerning deliberate premeditation and the factors that render a murder in the first degree committed with extreme atrocity or cruelty. The defendant did not object to these instructions. He claims on appeal, however, that a substantial likelihood of a miscarriage of justice resulted because the judge failed to reinstruct the jury on the relevance of his mental impairment to the elements of deliberate premeditation and extreme atrocity or cruelty.

"The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." *Commonwealth* v. *Bell*, 455 Mass. 408, 420 (2009), quoting *Commonwealth* v. *Robinson*, 449 Mass. 1, 7-8 (2007). See *Commonwealth* v. *Stokes*, 440 Mass. 741, 750 (2004) ("The scope of supplemental instructions is within the judge's discretion"). "If appropriate, the judge need only consider the question asked by the jury, and is not required to instruct on any other matters in response to the question." *Commonwealth* v. *Bell, supra.* "We judge the adequacy of a particular instruction not in isolation but in the context of the entire charge, as the adequacy of instructions is determined by their over-all impact on the jury." *Commonwealth* v. *Stokes, supra.*

There was no error. The judge adequately instructed the jury in his main charge on the relevance of mental impairment as it bore on deliberate premeditation and extreme atrocity or cruelty and did so in accordance with our Model Jury Instructions on Homicide 61-62 (1999). See *Commonwealth* v. *Szlachta, ante* 37, 48 (2012); *Commonwealth* v. *Mercado*, 456 Mass. 198, 206-207 (2010). The defendant does not suggest otherwise. The jury did not request clarification or reinstruction on this point. In the circumstances, the judge was not required to repeat that portion of his main charge concerning the effect of evidence of mental impairment. See *Commonwealth* v. *Johnson*, 429 Mass. 745, 753-754 (1999), and cases cited (where judge adequately instructed on effect of mental impairment on deliberate premeditation and extreme atrocity or cruelty in main charge, no further reinstruction, even when requested, was required). See also *Commonwealth* v. *Bell, supra* ("it was not error to decline to repeat portions of the main charge that were beyond the scope of the jury's question [and given that] the supplemental instruction appropriately responded to the jury's question").

Because the judge did not commit error, the defendant's claim of ineffective assistance of trial counsel, based on trial counsel's failure to object to the judge's "omission" in the reinstructions on the issue of the relevance of the defendant's mental impairment, is without merit. See *Commonwealth* v. *Waite*, 422 Mass. 792, 807 (1996); *Commonwealth* v. *Cohen*, 412 Mass. 375, 392 (1992).

5. *Relief pursuant to G. L. c. 278, § 33E.* We have examined the record pursuant to our duty under G. L. c. 278, § 33E, and discern no basis on which to grant the defendant relief.

6. *Conclusion.* The requests for a continuance and change of counsel were properly denied, as were the motions to suppress. The judgments of conviction are affirmed.

*So ordered.*